[No. 32644. Department Two. May 6, 1954.]

OGDEN CHAMBERLIN, *Respondent,* v. MARGARET CHAMBERLIN, *Appellant.*[1]

[1]Reported in 270 P. (2d) 464.

*H. A. Davis,* for appellant.

*John T. Moran,* for respondent.

DONWORTH, J.—This is an appeal by defendant wife from a decree of divorce awarded plaintiff husband after defendant's application for a thirty-day continuance of the trial was denied.

The parties were married in May, 1917, and lived at Park Ridge, Illinois, for more than twenty years prior to January 30, 1949, when plaintiff left the marital abode. He has not since returned there.

In July, 1951, plaintiff moved to Oroville, Washington, and a year and two days later filed this suit for divorce, alleging his residence in this state for more than one year; that he and defendant had been married in 1917 and were the parents of two children, both then of legal age; that he had sued for divorce in Illinois in 1945, and his wife had cross-complained for separate maintenance; that there was an attempted reconciliation in 1947; that he left her in 1949; and that she had treated him in a cruel manner and subjected him to personal indignities rendering his life burdensome. The complaint alleged in some detail the marital difficulties of the parties and the acts of defendant relied upon as grounds for a divorce.

The complaint further alleged that defendant was gainfully employed and was earning approximately seven thousand dollars per year and was in possession of real property of the parties having an equity worth $18,500.

In order to afford a clear understanding of the basic question presented in this case, we find it necessary to set out in chronological order a resume of the proceedings in the trial court.

On November 10, 1952, defendant filed a three-page affidavit in support of her motion for temporary support money, suit money, and attorney fees. The statements in this affidavit are in several material respects in direct conflict with the allegations of the complaint. Because the statements in this affidavit as well as the allegations of her answer were later stipulated to be considered as defendant's testimony at the trial, we quote two excerpts therefrom as follows:

" . . . that the plaintiff above named on the 30th day of January, 1949, left, deserted and abandoned your affiant and at the time that he left his place of residence in Illinois, he left debts totalling more than $10,000.00, which were obligations of the plaintiff and your affiant, and your affiant has since that time had to pay and is paying upon the indebtedness incurred by the plaintiff. That at the time the plaintiff left, deserted and abandoned your affiant, he took with him all money belonging to the parties, which consisted of approximately $2,700.00, and the plaintiff left your affiant in a destitute condition. That your affiant has no funds or property other than wages which she is earning at the present time and these wages, after deductions clerical assistance, taxes, expenses transportation and meals while at work, amount to approximately the sum of $100.00 per month; that your affiant is of the age of 55 years and is physically unable to be steadily employed and has been advised by a physician to cease employment and take an extended rest; that your affiant is now and has, for the past several years, been suffering from Arthritis of the spine, and her condition is such that it is necessary that an operation be performed in the near future or she will be a permanent invalid. That since the plaintiff left, deserted and abandoned your affiant, she has had to seek employment in order to pay obligations and debts incurred by the plaintiff, and to pay off the mortgage indebtedness existing against the home

in which she lives in Illinois, and obligations of the plaintiff's, and your affiant has no funds with which to carry on an effective prosecution of this action and your affiant is in need of funds for her support and care pending the outcome of this divorce action."

". . . that your affiant in order to defend the action instituted against her by the plaintiff has had to make a trip from her home in Illinois to Okanogan, Washington, and it will be necessary that your affiant make another trip from her home in Illinois to Okanogan, Washington at the time of trial and bring with her at that time at least two persons to testify as witnesses in her behalf at the trial of the above entitled action; . . ."

On November 12, 1952, defendant filed an answer in which she denied the allegations of cruel treatment of plaintiff and denied that she was earning seven thousand dollars per year, but alleged her net earnings to be one hundred dollars per month. In an affirmative defense, defendant alleged that plaintiff had spent and squandered or concealed large sums of money and confiscated large amounts of property to himself, thus depriving defendant of her interest therein. Details in support of these general allegations were set forth. It was further alleged that plaintiff had deserted defendant January 30, 1949, without just and reasonable cause. The answer concluded with an allegation that defendant was then ill of spinal arthritis and had been advised by her physician that unless she ceased her employment and took an extended rest she might become a permanent invalid. This answer contained no prayer for relief of any kind.

On December 9, 1952, at the instance of defendant, the case was set for trial on January 28, 1953.

On December 16, 1952, defendant filed another pleading entitled "ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSE." This pleading contained almost the same allegations as the first answer except that it asked for separate maintenance. The prayer is as follows:

"WHEREFORE, Defendant prays that the plaintiff's complaint be dismissed and that the plaintiff take nothing by reason thereof, and that the defendant be adjudged, entitled

to a Decree of Separate Maintenance and that such decree be entered herein and that the Court award to the defendant at least the sum of $125.00 per month from the plaintiff for her support, care and maintenance, and that the Court award to the *plaintiff* a reasonable attorney fee and Court costs and for such other and further relief as to the Court may seem just and equitable."

(At the trial, upon motion of defendant's counsel all reference to separate maintenance was stricken from this answer, and we need give that phase of the case no further consideration on this appeal.)

The affirmative matter in the answer was denied in plaintiff's reply.

On the evening of January 22, 1953, defendant telephoned from Illinois to her attorney at Okanogan, Washington, advising him that she had been stricken with influenza, was confined to her bed under the care of a physician, and that it was physically impossible for her to be present at the trial on January 28th. Her attorney on January 26th filed a motion for a continuance, supported by his affidavit reciting these facts and further stating that his client had confirmed her telephone statement to him by telegram and that she had agreed to furnish additional affidavits from herself and from her physician in support of the motion for a continuance.

On January 28, 1953, the trial date, the motion for a continuance was argued briefly when the court opened in the morning, and the court continued the hearing until the afternoon session so that defendant's attorney might see if he received any affidavits from defendant in the morning's mail.

At 1:45 p. m., that day, the motion was argued again after defendant's attorney had presented to the court her affidavit reading as follows:

"That she is the defendant named in the above entitled action; That she is a resident of the city of Park Ridge, Illinois; That last Wednesday, January 21, 1953, plaintiff [defendant] suffered an attack of influenza, from which she still suffers. That said influenza has aggravated the spinal arthritis condition and has incapacitated her. That she is

presently under the care of Dr. Helen Button, M.D. of Chicago, Illinois. That she has been instructed to rest, and avoid all unnecessary exertion, and she has been specifically instructed not to attempt to travel at the present time, as any exertion may cause irreparable damage to her health. That affiant has been advised that this action has been set for trial on January 28th, 1953.

"That, because of her present illness, she cannot be present in Okanogan, Washington on said date, and has been advised not to attempt said trip for at least 30 days. That affiant respectfully request a continuance of said trial until after February 28, 1953."

Defendant's counsel also submitted to the court a letter, purportedly written by a Chicago law firm, addressed to him, stating that defendant was ill and had been advised by her doctor not to travel, and enclosing a statement purporting to be written by defendant's doctor on a doctor's prescription blank, stating that defendant "is physically ill and unable to travel." The letter closed with an offer by the Chicago attorney to assist defendant's counsel "as much as possible in regard to the defense of this suit."

After defendant's attorney completed his argument in support of the motion for a continuance, plaintiff's counsel offered to stipulate that defendant, if present, would testify to the matters set out in her answer. The trial court then said:

"THE COURT: I think that matter there might be something, Mr. Hancock, for the court to take in consideration in determining whether a continuance should be granted or not. In other words, if the plaintiff is conceding that if the defendant were present that she would testify to the facts set forth in these affidavits and in her answer and affirmative defense here, without conceding, of course, that those are true, what is to be lost by proceeding with the trial of the case?"

After referring to another matter, the court denied defendant's motion for a thirty-day continuance, saying:

"I think, taking in consideration the stipulation made by the plaintiff here, that is, conceding if the defendant were present she would testify to the allegations as set forth in her answer and cross-complaint, and considering further the

showing that has been made on behalf of the defendant here for this continuance, it is the opinion of the court that the showing is not sufficient to justify the court in granting defendant's motion for a continuance. That ruling is made too, taking into consideration the concessions made by the plaintiff. The motion is denied."

Without waiving the motion for continuance, defendant's attorney then stipulated that defendant, if present, would testify as set forth in her answer and affidavit of November 10, 1952.

The trial of the case then proceeded. Plaintiff was the only witness (except a corroborating witness as to plaintiff's one year's residence in this state).

At the conclusion of plaintiff's case, defendant's counsel renewed his motion for a continuance. The motion and the court's ruling thereon were made as follows:

"MR. HANCOCK: Before counsel starts his argument, I would like at this time to renew my motion for a continuance of this case. It must be apparent to the court, after the plaintiff has testified, that the defendant does have a good defense to this cause of action and she should be permitted to testify in this matter and should be entitled to have her witnesses here and I again wish to renew my motion that the matter be continued over for a period of thirty days so she will have an opportunity to do that.

"MR. MORAN: In view of our stipulation that the matters set up in the answer be put on the record as her testimony—

"THE COURT: (Interrupting) Counsel, while there may be a defense to this matter, you are not enlightening the court with any information as to what the witnesses might be testifying to.

"MR. HANCOCK: I can't do that because I don't know the names of the witnesses. She has not provided those to me.

"THE COURT: The motion will be denied."

After hearing the arguments of counsel, the trial court orally announced its decision:

"THE COURT: Incompatability, of course, is not a ground for divorce under our statutes. The indications are that these people were just unable to get along for a long period of time. If that were the only evidence before the court, it certainly would not be grounds for a divorce, but the matter of nagging and reducing a man to penury by requiring him

to turn over his pay check and accepting back from his wife small sums such as she feels like doling out from day to day, harassment on his job, interfering with his work, and in some instances, to the point of forcing him to lose his job, those are certainly personal indignities that come within the purview of our statute. The decree of divorce will be granted."

Thereafter, defendant filed a motion to reopen the case supported by four additional affidavits: a new affidavit of defendant, an affidavit by her attending physician and one by each of two ladies who had lived near defendant's home in Illinois for twenty years. These affidavits show that defendant was too ill to travel from Illinois to Washington prior to, on, and after the trial date (January 28, 1953). The physician's affidavit avers that she saw defendant on January 26th when she told defendant that she could not travel under any circumstances. The doctor saw defendant again on January 30th "and she is still not in physical condition for a trip to the state of Washington and won't be able to travel for thirty days."

The motion to reopen the case and the supporting affidavits just referred to were filed February 3, 1953, the day the trial court entered its findings, conclusions, and decree of divorce. There is nothing in the record which indicates that the court made any ruling at that time on defendant's motion to reopen the case.

On February 5, 1953, defendant filed a motion for a new trial. The principal ground of the motion was:

"That the Court acted arbitrarily in denying the defendant a continuance for trial of the above entitled case and there was an abusive [abuse of] discretion on the part of the Court by which the defendant was prevented from having a fair trial."

In support of this motion, defendant filed another affidavit (her fourth) in which she averred facts relating to her defense to the divorce action in considerable detail. Among other things, the affidavit stated that plaintiff husband had twice before sued defendant for divorce in Chicago but had

become reconciled with her after each attempt had failed. The affidavit ended with this paragraph:

"Margaret Chamberlin, being first duly sworn, deposes and says that she is the affiant in the foregoing affidavit, by her subscribed, that she has knowledge of the contents thereof and the same is true in substance and in fact. That this affidavit is not made for purposes of delay, but is made for the purpose of a continuance until her health will permit her to travel from Park Ridge, Illinois to Okanogan, Washington to properly present her defense."

New affidavits by the same two ladies who had been defendant's neighbors for more than twenty years were filed, in which they deposed that they had each read defendant's latest affidavit, and that, if called as a witness in the cause, each could testify and confirm the facts stated therein "which are within my knowledge."

On February 9, 1953, defendant's trial counsel withdrew from the case and her present counsel was substituted. The motion for new trial was argued the next day, and the matter was taken under advisement by the court.

On April 16, 1953, the court filed a written memorandum opinion denying defendant's motion for new trial. Referring to the principal ground of the motion, the court said:

"This matter is now before the court on defendant's Motion for New Trial.

"Considering the first ground set forth in the Motion, viz: that the court acted arbitrarily in denying defendant a continuance, abused its discretion thus preventing the defendant from having a fair trial.

"*The court has reviewed the entire file of this case* and is still of the opinion the denial of continuance under the circumstances, was proper and without an abuse of discretion in that the defendant, in her pleadings, only entered a general denial of the allegations in plaintiff's complaint, praying only that the complaint be dismissed and she be awarded her costs and attorney fees. It was stipulated by counsel, in open court, that if the defendant were present her testimony would be as alleged in her answer and her affidavit filed November 12, 1952, which were, in substance, the same. Under these circumstances it is the opinion of the court the rights of the plaintiff [defendant] were in no

manner jeopardized. The court finds no merit in this contention of the defendant." (Italics ours.)

On April 28, 1953, an order was entered denying the motion for a new trial. The order incorporated by reference the court's memorandum opinion.

This appeal was then taken. Appellant's five assignments of error raise the single question of whether the trial court abused its discretion in denying her several requests for a continuance or for a new trial because of her physical inability to be present at the trial.

Respondent does not appear to dispute the fact that appellant became seriously ill in her home near Chicago, Illinois, beginning about a week prior to the trial date (January 28, 1953), and that she was advised by her physician that she could not travel to Okanogan for at least thirty days.

Appellant recognizes, in her briefs and in the oral argument of her attorney, that a motion for a continuance of a trial is addressed to the sound discretion of the trial court, and that denial of such a motion will be reversible error only when there has been an abuse of discretion on the part of the court.

The meaning of the term "abuse of judicial discretion" as applied to divorce cases is not confined to deciding a case by whim, caprice, or arbitrary conduct, through ulterior motives or in willful disregard of a litigant's rights, but it also includes a discretion exercised upon grounds or to an extent clearly untenable or manifestly unreasonable. *Holm v. Holm,* 27 Wn. (2d) 456, 178 P. (2d) 725; *Gordon v. Gordon, ante* p. 222, 266 P. (2d) 786.

Respondent relies on RCW 4.44.040 in support of his argument that the trial court did not abuse its discretion in denying appellant a continuance or a new trial. RCW 4.44.040 provides:

"A motion to continue a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and residence of the witness or witnesses. The court may also require the moving party to state, upon affidavit, the

evidence which he expects to obtain; and *if the adverse party admits that such evidence would be given, and that it be considered as actually given on the trial,* or offered and overruled as improper, *the trial shall not be continued. . . .*" (Italics ours.)

Respondent's position is (1) that appellant did not comply with RCW 4.44.040 by furnishing sufficient affidavits to justify a continuance, and (2) that, even if she had complied with the statute, the stipulation putting the allegations in her affidavit and answer into the record as her testimony, by the terms of the statute, made it unnecessary for the court to grant her a continuance.

In support of his argument that appellant did not comply with RCW 4.44.040, respondent cites *Thornthwaite v. Greater Seattle Realty & Imp. Co.,* 160 Wash. 651, 295 Pac. 933, a rescission case, not a divorce. There appellant, one of several defendants, was not present for the trial, and her attorney presented a letter from appellant's doctor saying she was unable physically to be present for the trial. Neither the doctor nor appellant made an affidavit. Her counsel's affidavit did not advise the court what her testimony would be if she were present for the trial, nor was there any showing that diligence had been used to procure her testimony. It does not appear from the decision whether appellant resided in this state or in California or elsewhere.

In that case, this court said:

" ' "A stronger case for a continuance on account of the absence of a witness must be made, if that witness is a party to the action than would be required were he a third person, . . . It is the duty of a party to be present at the trial of his own cause, and his absence will as a general rule be considered as his own peril. . . ." 9 Cyc. 113-114.' *Nye v. Manley,* 69 Wash. 631, 125 Pac. 1009."

In the *Thornthwaite* case, the trial court had granted a motion to reopen for the reception of appellant's testimony, on condition that she first place title to property in California (the subject of the action) in the registry of the court to abide the decision of the cause and also that she pay the expenses of respondent from California back to Seattle for

the reopening. Appellant refused to abide by the court's ruling, so the motion to reopen then was denied, as was a motion for a new trial. In view of the appellant's refusal to comply with the terms imposed by the trial court, this court found that the trial court did not abuse its discretion in denying the continuance or in refusing to reopen the cause or to grant a new trial.

However, in the case at bar, appellant never was given an opportunity to meet any terms the court might have imposed before reopening or granting a new trial. Neither had she refused to comply with any order of the trial court.

Even if it were conceded that the showing first made by appellant in support of her motion for a continuance was insufficient (and we do not decide that question), the showing made by appellant in support of her motion to reopen and her later motion for a new trial certainly was sufficient to inform the court that appellant intended to present a great deal of material evidence challenging almost every phase of respondent's testimony.

The statement in the *Thornthwaite* case that a stronger showing must be made to justify a continuance for the absence of a party than for the absence of a witness seems to be in conflict with rulings of this court in *Puget Sound Machinery Depot v. Brown Alaska Co.,* 42 Wash. 681, 85 Pac. 671; *Traynor v. White,* 44 Wash. 560, 87 Pac. 823; *Strom v. Toklas,* 78 Wash. 223, 138 Pac. 880, and *Zulauf v. Carton,* 30 Wn. (2d) 425, 192 P. (2d) 328.

In the *Puget Sound* case, *supra*, this court said:

"It is always well for trial courts to be liberal in the matter of granting continuances where a party or a material witness, on account of sickness or other unavoidable reason, is unable to be present at the time set for the trial of the cause. . . . But there must of necessity be some limitation on the extension of this courtesy and consideration."

We held in that case that the court had not abused its discretion by refusing to grant a *fourth* continuance to an ill party defendant.

In *Traynor v. White, supra,* we said:

*"Ordinarily the court will not go into a trial when one of the*

*parties, on account of sickness* or other unavoidable cause, *is unable to be present.* But there are, and must of necessity be, some exceptions to the rule." (Italics ours.)

In that case, we held that there was no abuse of discretion in denying a *third* continuance to an ill party defendant.

*Strom v. Toklas, supra,* cited *Traynor v. White,* and said:

"Where an application is made for a continuance on the ground of the absence of a party to an action who is also a material witness in the trial of the cause, the application stands upon a different footing from an application based upon the absence of witnesses who are not parties. . . . As the court remarked in *Jaffe v. Lilienthal* [101 Cal. 175, 35 Pac. 636], *it seldom happens that a trial can be properly had in the absence of the parties to the action, where the case is to be tried upon oral testimony.* It cannot be doubted that it is the right of the parties to the action to be present at the trial of their case. As the California court observed, this right may of course be waived, and should be held to be waived where the absence of the party is voluntary and under circumstances 'which ought not to induce a reasonable man having a due regard for the rights and interests of others and of the public . . . to absent himself.' The object of all litigation is to do justice between the parties." (Italics ours.)

We held in the *Strom* case that the court abused its discretion by refusing to grant even *one* continuance to a party defendant who was sick.

In *Zulauf v. Carton, supra,* our latest case quoting this rule, we cited the foregoing quotation from the *Strom* case and held that the court had abused its discretion in refusing to reopen the case. The defendant, out of town on business, returned on the evening of the day of the trial. The court had granted a continuance on condition that he pay seventy-five dollars and costs within twenty-four hours, and his attorney had not been able to reach him to obtain the money, so the continuance (the first asked) was consequently denied.

We said in the *Zulauf* case:

"An affidavit for reopening of a cause because of the absence of a party, where it alleges facts showing the absence was unavoidable, that the presence of the party was neces-

sary, and that he has a meritorious defense, is a sufficient showing upon which to grant the motion to reopen the cause."

The quotation from Cyc. of what appears to be a contrary rule in the *Thornthwaite* case, *supra*, is taken from *Nye v. Manley,* 69 Wash. 631, 125 Pac. 1009. In the *Nye* case, the rule was stated thus:

"A stronger case for a continuance on account of the absence of a witness must be made, if that witness is a party to the action than would be required were he a third person, *unless the case presents some peculiar feature from which some material injustice to the party's rights would result in case of trial without postponement."* (Italics ours.)

The italicized portion of the rule (not quoted in *Thornthwaite*) is an important qualification of the rule. Furthermore, from the facts of the *Nye* case it is apparent that the "absence of a witness" with which that rule is concerned is the *unexplained* and *unjustified* absence of a witness, since the defendant in that case had absented himself from his usual place of abode and gone to Alaska before the case was set for trial without making any arrangements with his attorney as to where he could be reached by mail or telegram.

In the case at bar, appellant has at all times remained at the family home in Illinois where the parties resided together for some twenty years prior to 1949. Furthermore, in the *Nye* case several continuances had been granted to allow defendant's attorney time to try to communicate with his client. Here no prior continuance had been requested.

 The rule cited in the *Thornthwaite* and *Nye* cases, *supra*, is an exception to the general rule and should be applied only where the absent party has without sufficient cause voluntarily left the place where the trial is to be held. In *Donaldson v. Greenwood*, 40 Wn. (2d) 238, 242 P. (2d) 1038, we cited the same rule in this form:

"A party, knowing the date a cause is set for trial, can not absent himself from the jurisdiction of the court and expect the court to delay the trial merely to suit his personal convenience."

The rule in the *Thornthwaite*, *Nye* and *Donaldson* cases should not be extended to cases such as the one at bar where the absence of the party is caused by a *bona fide* illness and where no prior continuance has been sought or granted.

 Most courts, including this court in the *Strom* and *Zulauf* cases, follow this general rule:

"Whether the ruling of a court on a motion for a continuance is within the proper exercise of its sound discretion usually depends on the facts of the particular case, the chief test being whether the grant or denial of the motion operates in the furtherance of justice. . . . a continuance should be granted if a denial thereof would operate to delay or defeat justice; *and courts have been said to be liberal in continuing a cause when to do otherwise would deny applicant his day in court.*" (Italics ours.) 17 C. J. S. 194, Continuances, § 6.

Especially in divorce cases a liberal view toward granting continuances is taken by most courts, and this is particularly so where the continuance is the first one sought.

The more liberal rule applied in divorce cases was well stated in *Hyser v. Hyser,* 53 Colo. 199, 124 Pac. 346, an action very similar to the case at bar. In that case, plaintiff husband was granted a divorce after defendant wife's motion for a continuance had been denied. The wife's father had become ill a few days before the trial, making it impossible for her to travel from Decatur, Illinois, to Denver, Colorado, to be present at the trial.

In ruling that the denial of the motion for a continuance was reversible error, the Colorado supreme court said:

"As stated in *Smith v. Smith, supra* [145 Cal. 615, 79 Pac. 275],

" 'It is a matter of public policy that divorces should only be granted where the fullest opportunity has been afforded both sides to be heard, and then only when adequate cause for divorce is shown. Whether such adequate cause exists can only be disclosed after both sides have had an opportunity to present all their evidence. *The public has an interest in having no divorce granted excepting for good cause,* . . .'

"In the case at bar the denial of the motion for continuance resulted in forcing counsel to try the case, not only without

defendant, but without witnesses, without evidence, without the means of presenting a defense, and without opportunity to refute plaintiff's testimony." (Italics ours.)

Such was precisely the result in this case. Appellant's attorney was forced to try the case without the presence and assistance of his client, without witnesses, without evidence, without means of presenting an adequate defense, and without an opportunity to refute respondent's testimony. Furthermore, this situation arose without fault on the part of appellant, as no question has been raised as to any lack of due diligence on her part.

Though this court has never had occasion to pass on the question of the right of a party to a divorce action to a continuance because of illness, we held in *Pringle v. Pringle,* 55 Wash. 93, 104 Pac. 135, that such an action was a matter of public interest and that the fullest possible hearing of the issues should be afforded. We there said:

" 'The parties to the action are not the only people interested in the result thereof. The public has an interest in the result of every suit for divorce; the policy and letter of the law concur in guarding against collusion and fraud; and it should be the aim of the court to afford the fullest possible hearing in such matters.' "

Statutory recognition that the state is an interested party in every divorce suit is provided by RCW 26.08.080, which requires each party to any divorce action to serve on the prosecuting attorney of the county in which the action is commenced copies of the pleadings and further provides that the prosecuting attorney shall appear upon the trial of default divorces and shall have the power to subpoena witnesses to appear at such hearings.

In support of his second proposition (that the stipulation as to appellant's testimony gave the court authority under RCW 4.44.040 to deny a continuance), respondent cites no cases but simply quotes the statute. RCW 4.44.040 has been virtually unchanged since it was enacted in 1854 by the first territorial legislature. In one hundred years, this court and its territorial predecessor has never held that the statute *compels* a trial court to deny a continuance where the oppos-

ing party stipulates that the absent party, if present, would testify to certain material facts as stated therein.

█ It is sufficient for the purpose of this case to say that despite the language of RCW 4.44.040, a motion for a continuance is always addressed to the sound discretion of the trial court. A stipulation by the party opposing the motion that he will admit that the absent party would, if present, testify in accordance with a certain stipulation does not relieve the court from exercising its discretion in passing on a motion for continuance.

The trial judge in the present case, in his oral comments at the time of denying the motion for a continuance and again in his memorandum opinion denying the motion for a new trial, expressed the opinion that appellant was not losing any substantial rights by being denied a continuance *because she was not asking for any affirmative relief.* We know of no rule that requires a defendant in a divorce action to seek affirmative relief in order to have a right to defend against the granting of a divorce to the opposing party. He or she, having denied the material allegations of the complaint, has the same right to testify and produce other witnesses in support of such answer as any other defendant.

█ We think the trial court abused its discretion in denying the motion for a new trial under the particular facts in this case. In holding that appellant was losing no substantial rights by not being personally present at the trial because she was not seeking any affirmative relief, the court was basing its exercise of discretion upon grounds that are clearly untenable or manifestly unreasonable. *Gordon v. Gordon, supra.*

The pleadings and affidavits in this case at the time the new trial was denied showed that sharply contested material issues of fact were involved which had to be resolved before the court could decide whether respondent was entitled to a divorce. Many of these issues were within the personal knowledge of only two persons, the husband and wife, whose testimony was in direct conflict.

To resolve these issues after hearing the testimony of only one party and considering a stipulation that the other party, if present, would testify to the contrary, is no substitute for a trial in which each party testifies in person.

The conflicting testimony of the two parties can only be weighed and properly evaluated by a trial judge who has seen and heard the *viva voce* testimony of each party and has had an opportunity to observe their demeanor on the witness stand and apply the usual tests for determining their relative credibility. This cannot be satisfactorily done by listening to one party testify in person and then comparing therewith the answer and affidavits of the other party. In a bitterly contested divorce case such as this, the procedure followed here afforded appellant little better consideration of her contentions than she would have received in a default divorce proceeding.

In summation, appellant was not responsible for the location of the place of trial. Respondent selected a forum some two thousand miles from the place where the parties had maintained their home for twenty years and where appellant still resided when she was taken seriously ill a week before the trial date. She did not "absent" herself from the place of trial as did the defendants in the *Nye* and *Donaldson* cases, *supra*. Instead, she stayed right at the marital abode where respondent had left her in 1949.

As we view it, no hardship could have been caused respondent by delaying the trial for thirty days. After all, at the time of the trial the parties had been married for more than thirty-five years. On the other hand, great hardship could (and did) come to appellant by requiring her to submit to a trial *in absentia*, thus summarily terminating her marital status without her being heard.

Under these circumstances, the granting of a divorce to respondent without permitting appellant to testify in support of her answer and the averments of her four affidavits seems to us a denial of justice.

Because, for the reasons stated herein, we are convinced that the trial court abused its discretion in refusing to grant

707

appellant's motion for a new trial, the judgment must be reversed and the cause remanded for that purpose.

It is so ordered.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.

