# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ESTATE OF HUNG NGUYEN, by and through PHUOC NHU,<br><br>Appellant,<br><br>v.<br><br>FRANCISCAN HEALTH SYSTEM; GILBERT JOHNSON, M.D. dba ST. JOSEPH CARDIOTHORACIC SURGEONS; FRANCISCAN CARDIOTHORACIC SURGERY ASSOCIATES AT ST. JOSEPH FRANCISCAN NORTHWEST PHYSICIANS HEALTH NETWORK; FRANCISCAN MEDICAL GROUP,<br><br>Respondents. | No.  52404-0-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — The Estate of Hung Nguyen (the Estate) appeals a judgement on a defense verdict rendered after a trial in a medical malpractice wrongful death lawsuit.  The Estate argues that the trial court abused its discretion when it denied the Estate's motion to continue the trial after its attorneys withdrew.  One of the respondents, Dr. Gilbert Johnston, raises two affirmative arguments:  that we should dismiss the appeal because the notice of appeal was not signed by an attorney, and that we impose sanctions against the Estate's appellate counsel based on the errors and arguments contained in the Estate's brief.

We use our discretion to hear the appeal on the merits, and hold that the trial court did not abuse its discretion when it denied the motion to continue.  We also hold that the Estate's

counsel did not fail to comply with the Rules of Appellate Procedure so egregiously as to warrant sanctions. Accordingly, we affirm.

FACTS

Hung Nguyen died in December 2008. Before his death, he received care at Franciscan Health System (FHS) in Pierce County. Dr. Gilbert Johnston, M.D., conducted a surgery on Nguyen before his death.[1] In 2012, Hung Nguyen's estate (the Estate) filed a wrongful death suit against FHS and Dr. Johnston.[2]

Although the Estate appeals a limited number of legal issues, a detailed history of the procedural facts is instructive. This case involves a prior appeal, several continuances, and multiple attorneys for the Estate who withdrew prior to trial.

A.      *Chronology of the Estate's Wrongful Death Suit*

In 2012, Gabrielle Nguyen-Aluskar brought this lawsuit as personal representative of the Estate.[3] However, Nguyen-Aluskar, who was a convicted felon, was not permitted to act as personal representative of the Estate.[4] *Estate of Hung Nguyen, ex rel. Nguyen-Aluskar v. Franciscan Health Sys.*, No. 73931-0-I, slip op. at 2 (Wash. Ct. App. Nov. 9, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/739310.pdf. When the Estate made a

---

[1] Dr. Johnston was doing business as St. Joseph Cardiothoracic Surgeons.

[2] This opinion refers to Franciscan Health System; Dr. Gilbert Johnston, M.D., doing business as St. Joseph Cardiothoracic Surgeons; Franciscan Cardiothoracic Surgery Associates at St. Joseph; and Franciscan Medical Group collectively as "respondents."

[3] Nguyen-Aluskar is Nguyen's daughter.

[4] Persons "who have been convicted of (a) any felony or (b) any crime involving moral turpitude" are "not qualified to act as personal representatives." RCW 11.36.010(1).

motion to substitute the personal representative, the trial court denied the motion, stating that Nguyen-Aluskar's conduct leading up to that point was "a deliberate, intentional fraud upon the court." *Estate of Hung Nguyen, ex rel. Nguyen-Aluskar*, No. 73931-0-I, slip op. at 7. The trial court then dismissed the lawsuit, and the Estate appealed. *Estate of Hung Nguyen, ex rel. Nguyen-Aluskar*, No. 73931-0-I, slip op. at 7. Division One of this court reversed the dismissal, holding that although Nguyen-Aluskar's fraudulent conduct was "troublesome," the trial court erred when it denied the motion to substitute the personal representative. *Estate of Hung Nguyen, ex rel. Nguyen-Aluskar*, No. 73931-0-I, slip op. at 13.

The case was remanded to the trial court in 2016, and Phuoc Nhu, the decedent's spouse, substituted as personal representative of the Estate. *Estate of Hung Nguyen, ex rel. Nguyen-Aluskar*, No. 73931-0-I, slip op. at 15. The trial court set a trial date for January 8, 2018.

Respondent FHS moved for the first post-appeal continuance in September 2017 FHS argued that its trial counsel would not be available in early January due to a conflicting trial that had more urgency and complexity. The Estate opposed the continuance, but suggested, in the alternative, a March 2018 trial date. The trial court continued the trial from January 2018 to April 9, 2018.

The Estate then moved for continuance in February 2018. In early 2018, the Estate's counsel, John Messina, was involved in a car accident and was hospitalized with injuries. In February 2018, Jeffrey Sadler, an attorney and partner at Messina's firm, agreed to represent the Estate so long as a trial date was set for April or later. Sadler did not file a formal notice of appearance, but filed a motion to adjust a trial date and requested he be copied on all correspondence related to the trial.

3

On March 8, 2018, the respondents moved to set a firm trial date of June 4. On March 19, the parties stipulated to a continuance, and a new trial date was set for June 4, 2018. Sadler and Messina represented the Estate in this stipulation.

Then, on April 12, 2018, the respondents requested a pretrial status conference. Presumably, the respondents so moved after they were informed that Sadler and Messina intended to withdraw as the Estate's counsel. On April 20, 2018, the trial court held a hearing on several motions, including the motion for pretrial conference. Sadler and Messina appeared at the hearing and requested to withdraw as attorneys for the Estate. The Estate was notified of Messina's intent to withdraw as early as April 3. Phuoc Nhu requested a continuance on behalf of the Estate to obtain new counsel.

The trial court granted the motion for the pretrial status conference, confirmed the withdrawal of Messina and Sadler, and denied the Estate's request for a continuance, stating that the Estate was required to be represented by an attorney at trial. The trial court then set a pretrial status conference for May 14, and continued the remaining motions to that date, giving the Estate time to find new counsel.

At the pretrial status conference on May 14, attorney William Budigan made a special appearance on behalf of the Estate and Phuoc Nhu. Budigan explained to the trial court that the Estate had retained him the week prior. He stated that he was not certain he was going to take the case. He made an oral motion for a 90-day continuance, but filed no formal motion.

The respondents objected to a continuance. They listed potential prejudice to FHS and Dr. Johnston, including that the date of care was 10 years past, that medical records are kept for only seven years, and that some of Nguyen's medical providers have moved or died. Counsel for

4

FHS and Dr. Johnston also listed their scheduling conflicts, explaining that any delay would result in the trial likely being pushed out another year because their calendars were full—especially in the 90 days following the June trial date. Dr. Johnston also explained that he would be prejudiced because he must disclose the outstanding malpractice claim against him, for insurance and other types of applications. His counsel argued that it was unfair for Dr. Johnston to have this case "hanging over his head" into 2019. Verbatim Report of Proceedings (RP) (May 14, 2018) at 17.

The trial court denied the continuance. The trial court explained that the case had gone on for many years with multiple attorneys and "that it's getting really close, if it's not there, to an abuse of process." VRP (May 14, 2018) at 11. The trial court listed its concerns:

> The problem the Court has is this case is, now, about six years old. The concern for this Court is discovery responses, in regards to interrogatory questions, have not been provided. Even with all the counsels on the case, the Court did review the pleadings in this case, and I believe at one point in time the daughter was admonished by the Court for representing or making representations to the Court as a nonlawyer or nonparty and here it is we are at May 14, 2018, and this case has a dead-set trial date of June 4th, and the representations Counsel is making on behalf of the family is not persuading this Court to move that trial date. This case needs to be heard one way or the other. The Court needs to make a decision in regards to the case one way or the other; either it's going to go on June 4th or the Court will entertain a motion at that point in time but the June 4th date remains.

VRP (May 14, 2018) at 21.

Budigan appeared on behalf of the Estate on June 4, 2018—the first day of trial. The Estate renewed its motion for a 90-day continuance.[5] Budigan contended he had not been able

---

[5] Budigan did not file a formal motion for continuance on June 4, but instead memorialized his appearance in a filing on June 20—after the trial—in a document entitled "Plaintiff's Motion in Limine." Clerk's Papers at 409-10.

to "get this case to a state of readiness for trial" because witnesses had not been prepared and the record was not organized. Clerk's Papers (CP) at 719. Budigan also argued that two expert witnesses (who were not disclosed until May 23) be allowed to testify, and if they were not, that a continuance was necessary because of the disorganization he inherited from prior counsel.

The respondents countered that they had provided Budigan with an organized, paginated set of files and exhibits. The respondents also noted that Dr. Johnston had travelled a great distance to appear at trial on the specified date.

The trial court reserved ruling on the continuance until after hearing the motions on whether to exclude the Estate's expert witnesses. The trial court ruled that one expert witness would be allowed to testify.

Regarding the motion to continue, the trial court noted that many reports, disclosures, and additions of expert witnesses were late or last-minute. The trial court stated:

> Counsel, when you came on the case—because you indicated last time that you weren't sure you were going to take the case; it would have depended on the decisions I gave then. You then chose to take the case with the decisions I made then, and we're here today for trial . . . .
>
> . . . It's been going on for a long time and very little has been done but a lot of what has not been done has been predominantly in the control of the Plaintiff, and it's the Plaintiff's case; so, the Court is trying to work with the Plaintiff and the Plaintiff's case, but I have to be cognizant of prejudice on the day of trial to the Defense.

VRP (June 4, 2018) at 86.

The trial court denied the Estate's motion for a continuance, stating, "Given the rulings the Court has made parsing through the witnesses, the discovery issues, and the streamlining of the motions that were brought, the request for a continuance is going to be denied. This matter

will be proceeding. I believe the Plaintiff's case has been streamlined tremendously." VRP (June 4, 2018) at 182.

The trial proceeded on June 4. At the end of trial, the jury returned a defense verdict.

B.    *Attorney Turnover and Other Instructive History*

Throughout litigation, the Estate has been represented by multiple different attorneys. Most withdrew for reasons not in the record. Some withdrew for undisclosed reasons under the Rules of Professional Conduct.

Attorney Carl Lopez filed the initial complaint in this case in 2012, but withdrew in August 2014.[6] Lopez did not state a reason for withdrawing. No objection to his withdrawal is in the record on appeal. Next, attorney Jack Connelly filed a declaration on behalf of the Estate in July 2013, but the record is silent as to any other appearances or filings.

Attorney John Messina began representing the Estate in January 2016. Additionally, attorneys Jonathan Nolley and Justin Dale entered an appearance on behalf of the Estate in June 2017. They represented the Estate alongside Messina and his firm until February 2018, when Nolley and Dale withdrew. Their reasons for withdrawal are subject to attorney client privilege.

On February 6, after Messina's accident, attorney Jeffrey Sadler, a partner at Messina's firm, agreed to represent the Estate, so long as a trial date was set for April or later. The parties agreed to continue the trial to June 2018. At some point in early April, Messina told Phuoc Nhu he intended to withdraw. Although prohibited from acting on the Estate's behalf, Nguyen-Aluskar wrote an ex parte email to the trial court stating that the Estate did not consent to

---

[6] There is also reference in the record to the Estate's first attorney being George Kargianis, but his name appears only once and on no filings.

Messina's withdrawal. Phuoc Nhu also sent an email to the court reiterating this lack of consent. The trial court treated Phuoc Nhu's email as an objection under CR 71.

Messina requested to withdraw under CR 71 in response to respondent's request for a status conference. Messina further requested his associated firm, which included Sadler, also be allowed to withdraw. The Estate's motion, signed by Messina, stated:

> [I]t has become clear that John Messina can no longer zealously represent the clients through trial. . . . Plaintiff's counsel requests [the trial court] allow withdrawal from the case by John Messina and his associated firms. The reasons for withdrawal have been expressly explained to the plaintiff. Plaintiff has ample opportunity to find new counsel should they so choose.

CP at 82.

Sadler appeared in court alongside Messina on April 20 and requested to withdraw. Sadler made it clear that he, his firm, and Messina were withdrawing not just for Messina's medical reasons, but also due to reasons under the ethical rules which could not be disclosed for confidentiality reasons. The trial court granted the attorneys' withdrawal motion.

Budigan then represented the Estate during the trial. After the trial, the Estate mailed a letter to the trial court stating that it was terminating Budigan, citing "egregious practice of law." CP at 465. Budigan then formally withdrew. This left the Estate unrepresented following the trial.

C.    *Notice of Appeal*

Phuoc Nhu, as the Estate's personal representative, then filed a notice of appeal in August 2018. At the time she filed the notice of appeal, the Estate was not represented by counsel.

Shortly before the appeal was filed, Nguyen-Aluskar, who was not a lawyer and who was prohibited from acting on the Estate's behalf, submitted a motion and declaration for waiver of

civil filing fees on behalf of Phuoc Nhu. The declaration sought waiver of filing fees *and the costs for transcription* of proceedings under Pierce County GR 34. Nguyen-Aluskar obtained a superior court commissioner's signature on an order waiving these fees. However, GR 34 does not provide for waiver of transcript fees. *See* PCGR 34. Nguyen-Aluskar modified the court-provided form to add the words "Court Transcripts" in key places on the motion title and relevant fee waiver sections on the forms Nguyen-Aluskar submitted. These modifications were typed into the form, making it difficult to detect the change. Someone at the trial court noticed the error, and the presiding superior court judge vacated the order granting waiver of fees "per CR 60 due to mistake, irregularity, inadvertence and/or fraud." CP at 621.

After Phuoc Nhu filed this appeal, Dr. Johnston responded by filing a motion in superior court to strike the appeal and for sanctions. The motion was based on the facts that the Estate was not represented by an attorney at the time the notice of appeal was filed and that the notice of appeal was not signed by an attorney. The trial court deferred the issue to this court. The Estate's current counsel, Gary Stenzel, filed a notice of appearance with this court on December 11, 2018.

In May 2019, the respondents moved this court to dismiss the appeal, and for sanctions, under RAP 18.9, citing multiple procedural defects. A commissioner of this court denied the motion without prejudice. The respondents sought modification of that ruling. A panel of this court denied the motion to modify.

The original appeal filed by Phuoc Nhu on behalf of the Estate, as well as the motion to dismiss the appeal and grant sanctions are now before us.

ANALYSIS

The Estate argues only that the trial court erred when it denied its motion to continue trial after Messina and Sadler withdrew.[7] Dr. Johnston raises two affirmative issues in his response. He argues that the appeal should be dismissed because the notice of appeal was not signed by an attorney, and he requests sanctions against the Estate's appellate counsel. We consider this appeal on its merits and affirm the judgment. We also deny sanctions sought by Dr. Johnson.

I. NOTICE OF APPEAL

As an initial matter, Dr. Johnston argues that we should strike the Estate's notice of appeal and dismiss this appeal because the notice of appeal was filed when the Estate did not have legal counsel, and was not signed by an attorney. We exercise our discretion to consider the appeal on the merits.

We interpret the Rules of Appellate Procedure (RAP) "liberally . . . to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2(a). We "may waive or alter the provisions of [the Rules] in order to serve the ends of justice." RAP 1.2(c). "A party seeking review of a trial court decision reviewable as a matter of right must file a notice of appeal." RAP 5.1(a). We "disregard defects in the form of a notice of appeal . . . if the notice clearly reflects an intent by a party to seek review." RAP 5.3(f).

---

[7] Throughout its brief, the Estate references expert witnesses and interpreters. Because these issues are not germane to the continuance issues, we do not address them.

Dr. Johnston argues that estates are required to be represented by attorneys. He bases this argument on an unpublished case from this court, *Bozgoz v. Essakhi*, where we held that the personal representative of an estate may not act as a pro se litigant on the estate's behalf and that the trial court did not err in striking the personal representative's complaint under CR 11. No. 50381-6-II, slip op. at 4-5 (May 15, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2050381-6-II%20Unpublished%20Opinion.pdf. He also relies on CR 11, which provides that "every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in the attorney's individual name." Br. of Resp't (Gilbert Johnston, M.D.) at 20. Dr. Johnston argues that because organizations and other legal entities must be represented by an attorney, the notice of appeal should be stricken and the appeal dismissed because it was effectively not signed. *See Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 155 Wn. App. 479, 230 P.3d 608 (2010), *rev'd on other grounds*, 170 Wn.2d 577 (2010).

RCW 11.48.010 authorizes a personal representative to maintain and prosecute actions and to institute suits to collect debts due to the estate. But even assuming, without deciding, that a personal representative is not authorized to personally sign a notice of appeal, we may, under the Rules of Appellate Procedure, exercise our discretion to "waive or alter the provisions of [the Rules] in order to serve the ends of justice." RAP 1.2(c). Here, after the Estate's attorney withdrew, Phuoc Nhu signed and filed a notice of appeal on behalf of the Estate in August 2018. Although the notice of appeal was not signed by an attorney, the notice clearly reflects an intent by the Estate to seek review. See RAP 5.3(f). Moreover, the Estate cured any error when counsel filed a notice of appearance in December 2018.

We therefore exercise our discretion under RAP 1.2 and resolve this appeal on its merits.

## II. ABUSE OF DISCRETION

The Estate argues that the trial court abused its discretion when it denied the Estate's motion for continuance after it hired new counsel shortly before trial. We disagree.

The trial court has broad discretion to grant or deny a motion for a continuance. *City of Bellevue v. Pine Forest Props., Inc.*, 185 Wn. App. 244, 268, 340 P.3d 938 (2014). The burden is on the party seeking the continuance to show good cause for a continuance. CR 40(d); *see also Dewitt v. Mullen*, 193 Wn. App. 548, 555, 375 P.3d 694 (2016). An attorney's withdrawal does not give the party an absolute right to a continuance. *Jankelson v. Cisel*, 3 Wn. App. 139, 141, 473 P.2d 202 (1970). This rule prevents a party desiring a continuance from simply discharging counsel to achieve a continuance. *Peterson v. Crockett*, 158 Wash. 631, 636, 291 P. 721 (1930).

We will not disturb the trial court's decision to grant or deny a continuance absent a manifest abuse of discretion. *Pine Forest Props.*, 185 Wn. App. at 268. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Teter v. Deck*, 174 Wn.2d 207, 215, 274 P.3d 336 (2012). A trial court's decision is manifestly unreasonable if it is "'outside the range of acceptable choices, given the facts and the applicable legal standard.'" *Teter*, 174 Wn.2d at 215 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

A. *Manifest Abuse of Discretion*

In exercising its discretion to grant a continuance, a trial court should consider six factors. *Balandzich v. Demeroto*, 10 Wn. App. 718, 720, 519 P.2d 994 (1974). These factors are (1) the

necessity of reasonably prompt disposition of the litigation; (2) the needs of the moving party; (3) the possible prejudice to the adverse party; (4) the prior history of the litigation, including prior continuances granted the moving party; (5) any conditions imposed in the continuances previously granted; (6) and any other matters that have a material bearing upon the exercise of the discretion vested in the court. *Demeroto*, 10 Wn. App. at 720.

1. *The Necessity of Reasonably Prompt Disposition of the Litigation*

The decedent died in 2008. The initial complaint in this case was filed in 2012. The trial court considered this factor when it stated that the case had gone on for too long "that it's getting really close, if it's not there, to an abuse of process." VRP (May 14, 2018) at 11.

The Estate argues that the respondents were responsible for previous delays because the respondents forced the case to the court of appeals in 2015. Although the objections of the respondents did lead to that appeal, it was the illegal appointment of Nguyen-Aluskar as personal representative that created that dispute. *Estate of Hung Nguyen, ex rel. Nguyen-Aluskar*, No. 73931-0-I, slip op. at 2. The respondents were not responsible for this delay.

The Estate also argues that "the family wanted [the suit] to be resolved quickly." Br. of Appellant at 15. But this argument is not supported by the record.

First, the Estate waited nearly four years from the date of the decedent's death to bring suit. Second, it was the Estate that moved for the continuance at issue here. Although the respondents FHS moved for the first continuance in September 2017 due to their counsel's conflicting trial, the Estate filed the next motion for continuance to accommodate a new attorney.

At the time of the final continuance motion, a prompt resolution was required because any continuance would likely have pushed the trial into the next calendar year based on

respondent counsels' busy trial schedules. Additionally, the respondents explained that medical records are kept for only seven years and that some of the providers have moved or died. Based on these facts, the trial court properly considered the need for a reasonably prompt resolution.

2. *The Needs of the Moving Party*

The Estate's counsel withdrew two months before trial. The Estate appears to argue that the car accident was the sole reason for withdrawal. But this is not what happened. Sadler and Messina withdrew for reasons they could not disclose under the ethical rules. Based on this representation to the court, it is clear that their reasons for withdrawal went beyond Messina's accident.

Although the Estate and Budigan may have had a great burden to try the case under a relatively short time frame, we hold that the circumstances were partly those of the Estate's making. The withdrawal of Messina and Sadler was not surprising given the revolving door of attorneys hired by the Estate during the course of litigation. Likewise, their withdrawal under the ethical rules—like those of other attorneys of record—casts a shadow on the Estate's argument, especially because the Estate leaves the full circumstances of attorney withdrawal out of its brief. Moreover, the record is clear that the respondents helped Budigan prepare the case. Accordingly, the trial court properly considered the needs of the moving party.

3. *The Possible Prejudice to the Adverse Party*

The Estate argues that the respondents would not have been prejudiced by delay because they had years to prepare for trial and the Estate was asking for only 60-90 additional days. The Estate argues that the respondents therefore benefited from the trial court's decision to deny the

14

continuance. But that is not the test. The question is if the adverse party would be prejudiced in the event a continuance is *granted*.

The potential prejudices to the respondents were put before the trial court judge. There was potential prejudice to FHS and Dr. Johnston because of the age of the record, including that the date of care was 10 years past, medical records are kept for only seven years, and some of the providers had moved on or died. Additionally, because of FHS's and Dr. Johnston's attorneys trial calendars, any delay would result in the trial likely being pushed out another year. Because Dr. Johnston was required to disclose the outstanding malpractice claim against him, he argued that it was unfair for him to have that "hanging over his head" if the trial was continued into 2019. The respondents also argued that such a long delay would be costly to their clients and prolong reporting obligations for other providers. For these reasons, the trial court properly considered possible prejudice to the respondents.

4. *The Prior History of the Litigation, Including Prior Continuances Granted the Moving Party*

Without citing to the record, the Estate argues that the respondents had "at least 5 continuances and the Plaintiff had just two." Br. of Appellant at 18. The record on appeal shows only two continuances granted after the remand. The first was granted after FHS filed a motion stating that its trial counsel would not be available in early January due to a conflicting trial that had more urgency and complexity. The trial court continued the trial from January 2018 until April 9, 2018. The second was granted after the Estate moved for a continuance in February 2018 due to Messina's accident. After this, the trial court set the June 2018 trial date based on the parties' stipulation. The record on appeal is silent as to any other continuances, before or after the first appeal to this court.

The Estate's brief also ignores the high turnover in Estate's counsel and the reasons for their withdrawal, all of which were before the trial court. The record suggests that the trial court was aware of the history of litigation and took it into account. The trial court listed its concerns:

> The problem the Court has is this case is, now, about six years old. The concern for this Court is discovery responses, in regards to interrogatory questions, have not been provided. Even with all the counsels on the case, the Court did review the pleadings in this case, and I believe at one point in time the daughter was admonished by the Court for representing or making representations to the Court as a nonlawyer or nonparty and here it is we are at May 14, 2018, and this case has a dead-set trial date of June 4th, and the representations Counsel is making on behalf of the family is not persuading this Court to move that trial date. This case needs to be heard one way or the other.

VRP (May 14, 2018) at 21. Accordingly, the trial court properly considered the history of the litigation.

> 5. *Other Matters That Have a Material Bearing upon the Exercise of the Discretion Vested in the Court*[8]

The Estate again argues that the continuance requested was based on the fact that Messina's withdrawal was due to medical reasons but ignores the other issues surrounding his withdrawal. The Estate argues that the need for a continuance is "not the Plaintiff's fault" and calls the denial "confusing." Br. of Appellant at 18.

The trial court was not confused. The trial court examined other issues that could have had a bearing on the decision the court took. The trial court examined "rulings the Court has made parsing through the witnesses, the discovery issues, and the streamlining of the motions that were brought, the request for a continuance is going to be denied." VRP (June 4, 2018) at

---

[8] The record is silent as to any conditions the trial court imposed in any previous continuances, so we do not address that consideration.

182. The record shows the trial court took a balanced approach in its decision, as evidenced by

the trial court judge's explanation:

> It's been going on for a long time and very little has been done but a lot of what has not been done has been predominantly in the control of the Plaintiff, and it's the Plaintiff's case; so, the Court is trying to work with the Plaintiff and the Plaintiff's case, but I have to be cognizant of prejudice on the day of trial to the Defense.

VRP (June 4, 2018) at 86.

The trial court properly examined whether to grant a continuance in accordance with all

the applicable *Demeroto* factors. Indeed, the record is silent as to the trial court taking anything

extraneous into consideration in denying the continuance. For these reasons, the trial court's

denial of a continuance was not "'outside the range of acceptable choices, given the facts and the

applicable legal standard.'" *Teter*, 174 Wn.2d at 215 (quoting *Marriage of Littlefield*, 133

Wn.2d at 47). Accordingly, we hold that the trial court's decision to deny the continuance was

not a manifest abuse of discretion.

B.       *The Estate's Arguments are Unavailing*

The Estate relies on several cases to argue that the trial court should have granted the

continuance to avoid prejudice to the Estate. None are convincing.

First, the Estate cites *State v. Chichester* to argue that prejudice to the presentation of a

case is a primary factor in granting or denying a continuance. 141 Wn. App. 446, 170 P.3d 583

(2007). But *Chichester* is a criminal case, and the statement the Estate relies on is in a

concurring opinion that summarized the many factors the trial court may consider when ruling on

a continuance; the concurrence does not list one of them as a primary factor. *Chichester*, 141

Wn. App. at 454, 459-60 (Cox, J., concurring in part and dissenting in part). In *Chichester*, the

State moved for a continuance on the day of trial after agreeing to that trial date the previous

week in a scheduling conference. 141 Wn. App. at 450. The trial court denied the motion after

hearing argument from both sides and weighing multiple factors. *Chichester*, 141 Wn. App. at

452-53. Division One of this court affirmed the denial. *Chichester*, 141 Wn. App. at 455.

To the extent *Chichester* applies, it works against the Estate. Here, as in *Chichester*, one

party moved for continuance on the day of trial. The trial court heard argument from both sides

and weighed multiple factors. The trial court denied the continuance.

Next, the Estate argues that the trial court's decision was "arbitrary and capricious."[9] Br.

of Appellant at 19. But that is not the standard in an appeal of a denied continuance. We review

a trial court's denial of a continuance for a manifest abuse of discretion. *Demeroto*, 10 Wn. App.

at 720.

The Estate also argues that our Supreme Court's decision in *Chamberlin v. Chamberlin*

supports a remand for a new trial. 44 Wn.2d 689, 270 P.2d 464 (1954). We disagree. Not only

does *Chamberlin* pre-date the *Demeroto* test, but it is distinguishable. In *Chamberlin*, the court

held that the trial court should have granted a continuance so that a party who was ill could

recover and travel to testify at divorce proceedings. 44 Wn.2d at 705. The holding was based on

the right of a party to be present at his or her own trial, and on the liberal view toward granting

continuances in divorce cases. 44 Wn.2d at 705. This case was not a divorce proceeding.

Furthermore, all parties were present at trial.

---

[9] Furthermore, the Estate's application of the arbitrary and capricious standard, even if it was
correct, is based on a case that has since been overturned and has nothing to do with trial court
discretion. *See Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955) (examining a zoning
decision by the King County Board of Commissioners), *overruled by Fleming v City of Tacoma*,
81 Wn.2d 292, 502 P.2d 327 (1972).

Finally, the Estate argues that *Coggle v. Snow*, 56 Wn. App. 499, 784 P.2d 554 (1990) and *Butler v. Joy*, 116 Wn. App. 291, 65 P.3d 671 (2003) support its argument. However, both of these cases pertain to motions to continue motions for summary judgment under CR 56(f). Accordingly, neither case is apt.

We exercise our discretion under RAP 1.2 and resolve this appeal on its merits. However, we hold that the trial court did not manifestly abuse its discretion when it denied the Estate's motion to continue the trial. Accordingly, we affirm.

## ATTORNEY FEES

Dr. Johnston argues that we should sanction the Estate under RAP 18.9. Dr. Johnston claims the Estate's counsel, had "complete disregard for the Rules of Appellate Procedure" and made "false claims of judicial bias and/or misconduct." Br. of Resp't (Gilbert Johnston, M.D.) at 33. We disagree.

We may order sanctions on a party or counsel "who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with [the RAPs]." RAP 18.9(a).

Dr. Johnston claims that the Estate's factual statement is not presented without argument and fails to cite to the record as required in RAP 10.3(a)(5). He further argues that the Estate made multiple, personal attacks on the trial judge that were not supported by the record. We hold that the Estate's brief did not use the rules for purposes of unwarranted delay or otherwise

No. 52404-0-II

fail to comply with the RAPs so egregiously as to warrant sanctions. As a result, we deny Dr.

Johnston's motion for sanctions.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, P.J.

Maxa, J.

Melnick, J.