**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STACY L. JONES, | No. 54116-5-II |
| Respondent, | |
| v. | |
| MANUEL E. BOLIVAR, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Stacy L. Jones petitioned for domestic violence protection orders for herself and her four minor children against Manuel E. Bolivar. Before the hearing, Bolivar made a threat in connection with the commissioner who was presiding over the case, prompting the commissioner's recusal and the circulation of a security alert in the superior court. Bolivar moved for a change of venue or appointment of a visiting judicial officer. The trial court denied the motion.

Bolivar did not appear at the final hearing, and his attorney explained that Bolivar had missed his flight the night before and requested a continuance, which the trial court denied. The court admitted Bolivar's domestic violence evaluation into evidence. After the final hearing, the trial court imposed protection orders prohibiting Bolivar from contacting Jones and their children. The trial court also ordered Bolivar to surrender any weapons.

Bolivar appeals. He argues the trial court erred by denying his motion for a change of venue or a visiting judge, denying his motion for a continuance, and admitting the domestic violence

evaluation. Jones requests that this court award her attorney fees on appeal and impose sanctions on Bolivar.

We affirm the protection orders and the order to surrender weapons. We grant Jones attorney fees on appeal. We deny the request for further sanctions.

FACTS

Bolivar and Jones have four minor children together. Jones filed a parentage action and in 2014 received a five-year restraining order prohibiting Bolivar from contacting Jones or their children. Commissioner Tracey Mitchell also required Bolivar to complete domestic violence and substance abuse evaluations and treatment "prior to petitioning the court for visitation." Clerk's Papers (CP) at 43. Bolivar never completed the required evaluations or treatment.

Over the next several years, Bolivar created an Internet blog website about the court orders prohibiting him from contacting his children and a YouTube channel containing more than 100 videos of the children. He also hung banners and posted stickers encouraging the children to contact him in areas the children frequented, including near their school.

In June 2019, shortly before the five-year protection order expired, Jones petitioned for domestic violence protection orders under RCW 26.50.030 to permanently restrain Bolivar from contacting Jones or their children. A hearing was set before Commissioner Mitchell for June 2019.

Several days before the hearing, Bolivar called the Washington State Bar Association seeking an attorney referral. He complained to the staffer who answered the phone about corruption in Lewis County, and he told them that they would "read about it" if Bolivar "didn't get his way." CP at 234. He mentioned Commissioner Mitchell by name in the call. The bar association's general counsel informed Commissioner Mitchell about the call by e-mail and phone

2

call. Commissioner Mitchell forwarded the e-mail to all three Lewis County Superior Court judges with a few sentences explaining what precautionary measures were being taken. The Lewis County Superior Court administrator acquired a photograph of Bolivar and placed it in the court administrator's office so staff could identify him, alongside photographs of two other individuals.

Commissioner Mitchell recused from the case due to Bolivar's phone call. After her recusal, the hearing was continued at least two times. When the case was assigned to Judge Joely O'Rourke, Commissioner Mitchell forwarded the security alert to Judge O'Rourke a second time in September 2019, without any comment. Judge O'Rourke did not respond to the e-mail.

In September 2019, Bolivar attended a domestic violence evaluation. The evaluation placed Bolivar in the "over-all high-range-risk for lethality and recidivism" and recommended "level 4 domestic violence intervention treatment" for a minimum of 18 months. Sealed Clerk's Papers at 493 (boldface omitted). Jones then filed a declaration heavily quoting from the evaluation and describing other actions that alarmed Jones, including placement of the stickers near the children's school and attempts to contact the children via social media.

In late September 2019, Bolivar's attorney saw the photograph of Bolivar in the court administrator's office. Bolivar made a public records request for Lewis County Superior Court internal e-mails regarding himself and discovered the internal security alert e-mails regarding his threat about Commissioner Mitchell.

Bolivar then moved to change venue or appoint a visiting judicial officer. At a hearing on November 14, 2019, before Judge O'Rourke, Bolivar argued that it would be impossible to hold an impartial hearing in Lewis County. After acknowledging that no judge had responded to the e-mail from Commissioner Mitchell, Bolivar's attorney stated, "[I]t's speculation, but I respectfully

submit, more was said outside of electronic communication about my client between this court's judicial officers and within administration as well." Verbatim Report of Proceeding (VRP) (Nov. 14, 2019) at 6. "[W]e submit that there is a mountain of evidence that indicates our pool of judicial officers in this court and court administration had prior knowledge and, frankly, a fear of my client." *Id.* at 7. Bolivar requested that the trial court transfer the case to a neighboring county or appoint a visiting judicial offer.

The trial court asked if Bolivar had any evidence that any of the county's judicial officers feared him. Bolivar argued that the e-mail notice of his threat "implicates that everyone is being told to be wary." *Id.* at 9. The trial court noted that judicial officers frequently encounter safety risks: "At least once daily I have somebody up from the jail sitting in red, which tells the court this person is a safety risk, and if we had a judicial officer recuse from every case, we wouldn't be able to conduct the courts properly." *Id.* at 9-10.

Jones responded that granting the motion would invite Bolivar to issue additional threats to judicial officers in the next county: "If the court grants a change in venue, there is nothing to stop Mr. Bolivar from calling in new threats to new judicial officers and trying to find a county in this state that would ignore all of the vast evidence before them that he is a threat." *Id.* at 11. She pointed out that court administration's response to the threat complied with GR 36, the court rule addressing trial court security, and relevant public safety standards. Jones's counsel also noted that Jones was going into debt to pay her attorney fees, which a change of venue to a more distant county would exacerbate.

The trial court denied the motion to change venue or appoint a visiting judicial officer, explaining that Commissioner Mitchell followed standard steps that judicial officers and court

administration take when they become aware of a threat. Judge O'Rourke did not remember the alert e-mails, explaining that she gets similar e-mails "a lot" and they do not typically affect a judicial officer's ability to be fair and impartial. *Id.* at 18. Judge O'Rourke also said that she was not afraid of Bolivar.

Judge O'Rourke further pointed out that if judges had to recuse every time they received a security alert, the court would not be able "to get stuff done." *Id.* at 19. She also said that she was unaware of Bolivar's picture at the front desk and said that providing a picture at the front desk is standard protocol when there has been a threat.

After issuing her ruling, Judge O'Rourke then noted that she had been a deputy prosecutor in 2011 when Bolivar was involved in a criminal case in the county. Judge O'Rourke did not believe that she "ever had any dealings in the case whatsoever," and a different prosecutor was assigned to the case, but she nevertheless invited Bolivar to file an affidavit of prejudice. *Id.* at 20. But Judge O'Rourke made it clear that an affidavit of prejudice would not result in a change of venue or appointment of a visiting judge.

Bolivar filed an affidavit of prejudice against Judge O'Rourke. The day of the final hearing, Judge Andrew Toynbee, another Lewis County Superior Court Judge, recused. The case was then assigned to Lewis County District Court Judge R.W. Buzzard, and proceeded to a final hearing in November 2019.

The morning of the hearing, Bolivar's counsel requested a continuance because Bolivar had missed a flight from Denver, Colorado the previous evening. Jones raised that there were additional flights from Denver that Bolivar could have taken and that the number of previous

continuances in the case weighed in favor of denying the request. The trial court denied the motion for a continuance.

Bolivar also asked the trial court to exclude from consideration the September domestic violence evaluation under ER 408, which prohibits admission of settlement negotiations to prove a claim's validity. "This evaluation was the subject of negotiations while we were trying to reach a settlement in this case and enter agreed restraints in a parentage action. . . . This evaluation was given to [Jones] and releases were signed in the interest of reaching a settlement in this case." VRP (Nov. 25, 2019) at 26-27. Judge O'Rourke had previously ruled that the evaluation was not barred by ER 408.[1] Judge Buzzard declined to revisit that ruling.

After the hearing, the trial court granted the petition for a lifelong protection order for Jones. The trial court imposed a one-year protection order for the children, but noted that Jones could reapply for additional one-year orders until the children reached 18. "However, this order will yield to any family law order if and when Mr. Bolivar follows through with their requirements." *Id.* at 127. The trial court also ordered Bolivar to surrender any weapons. The trial court awarded Jones attorney fees.

Bolivar appeals the protection orders and the order to surrender weapons. He requests that we remand for a new hearing in a different county. Jones argues that we should dismiss the appeal because although Bolivar included assignments of error in his briefing to this court, he did not include a list of issues raised as required by RAP 10.3.

---

[1] The hearing for this ruling has not been designated and is not included in our record.

ANALYSIS

I. REQUEST TO DISMISS THE APPEAL

As an initial matter, RAP 10.3(a) calls for a brief to contain both assignments of error and issues pertaining to those assignments, as well as argument that cites to legal authority and relevant portions of the record. If "the nature of the appeal is clear," and the brief contains argument and supporting legal citation for all relevant issues "so that the Court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling reason for the appellate court not to exercise its discretion to consider the merits of the case." *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). Bolivar's brief contains assignments of error, the nature of the appeal is clear, and the relevant issues are argued in the body of the brief with citations to authority. We decline to dismiss Bolivar's appeal.

II. MOTION TO CHANGE VENUE OR APPOINT A VISITING JUDICIAL OFFICER

Bolivar claims that the trial court abused its discretion when it denied his motion to change venue or appoint a visiting judicial officer under RCW 4.12.030. Bolivar compares his case to *State v. Hillman*, 42 Wash. 615, 85 P. 63 (1906), arguing that "every Judicial Officer in Lewis County Superior Court should have recused" due to the court administrator's office displaying his photograph, the e-mail security alert to Lewis County judicial officers, and Commissioner Mitchell's resending of the e-mail security alert to Judge O'Rourke. Appellant's Br. at 8. Bolivar argues that we should overturn the protection orders and remand for a new hearing in a neighboring county. We disagree.

RCW 4.12.030(2) provides that a trial court may transfer a case to a different county "when it appears by affidavit, or other satisfactory proof . . . that an impartial trial cannot be had therein."

Bolivar asks this court to review the denial of his motion to change venue or appoint a visiting judicial officer de novo "given the clear existence of prejudice against" him, but he provides no legal support for this argument. Appellant's Br. at 7. Although Bolivar contends that we should engage in de novo review, it is well settled that a trial court's decision to deny a motion to change venue is reviewed for manifest abuse of discretion. *Unger v. Cauchon*, 118 Wn. App. 165, 170, 73 P.3d 1005 (2003). A manifest abuse of discretion occurs "when no reasonable person would adopt the trial court's position." *Id*.

A.      Appearance of Fairness

Bolivar primarily argues that no Lewis County judicial officer could have fairly presided over his case. The test for "whether a proceeding satisfies the appearance of fairness doctrine is how it would appear to a reasonably prudent and disinterested person." *Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Wash. State Human Rights Comm'n*, 87 Wn.2d 802, 810, 557 P.2d 307 (1976). "Evidence of a judge's actual or potential bias is required before the appearance of fairness doctrine will be applied." *State v. Dominguez*, 81 Wn. App. 325, 329, 914 P.2d 141 (1996).

Bolivar relies in part on Judge Toynbee's recusal to argue the rest of the Lewis County judicial officers also had to recuse. In *West v. Osborne*, 108 Wn. App. 764, 769, 34 P.3d 816 (2001), several Pierce County judges had recused, and one had commented that he felt "'the case ought to be heard in another county.'" *Id*. This court held that the recused judge's remarks did not show that other Pierce County judges could not be impartial or fairly preside over the case. *Id.* at 770. And Division Three has similarly declined to remand for a new trial in a different county based on a prior judge's conflict of interest when the judge in question had recused from the case.

*In re Custody of Z.C.*, 191 Wn. App. 674, 706-07, 366 P.3d 439 (2015). Division Three did not conclude the entire bench in that county was disqualified.

Here, Commissioner Mitchell recused because of a threatening statement Bolivar made in the context of a conversation where Bolivar also expressed frustration about her. Judge O'Rourke invited Bolivar to file an affidavit of prejudice due to her former status as a prosecutor. Judge Toynbee recused at Bolivar's request. None of these three judicial officers presided over Bolivar's case. Additionally, the security alert e-mail regarding Bolivar's statement was sent to only superior court judges and Judge Buzzard was not among the recipients. Nothing else in our record suggests that Judge Buzzard received the security alert.

Similar to *West* and *Z.C.*, these recusals, without more, do not establish that Judge Buzzard was incapable of being impartial or fairly presiding over the hearing. Judges in Lewis County get security alerts regularly, and the mere exercise of court security protocols does not mean all of the judicial officers at that court cannot be fair. Bolivar has not shown evidence of Judge Buzzard's actual or potential bias. *Dominguez*, 81 Wn. App. at 329. Thus, we hold that the appearance of fairness was not implicated.

B.     Analogy to Pretrial Publicity and *Hillman*

The parties discuss cases involving pretrial publicity that occurred before jury trials. We conclude that these cases are irrelevant. The case before us involved a bench trial, and a trial court is presumed "to perform its functions regularly and properly without bias or prejudice." *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 841, 14 P.3d 877 (2000). We presume that judges conducting bench trials base their decisions on only appropriate evidence. *In re Marriage of Zigler*, 154 Wn. App. 803, 810, 226 P.3d 202 (2010).

Bolivar relies in particular on *Hillman*. There, multiple inflammatory newspaper articles about the defendants' lack of business integrity were widely circulated throughout King County, and an association of people defrauded by the defendants organized for the purpose of turning public opinion against the defendants. 42 Wash. at 617-18. No similar widespread targeting of Bolivar's reputation occurred in this case. More importantly, routine notice to court employees under established security protocols is not likely to have the same effect as the pretrial publicity that occurred in *Hillman*. The pretrial publicity analysis is inapplicable here.

In sum, we hold that it was not a manifest abuse of discretion for the trial court to deny Bolivar's motion to change venue or appoint a visiting judicial officer.

### III. MOTION FOR A CONTINUANCE

Bolivar argues that the trial court abused its discretion when it denied his motion for a continuance. He claims that he was unable to attend the hearing through no fault of his own and was prejudiced by the denial of the continuance, making the denial a manifest abuse of discretion. We disagree.

We review a trial court's denial of a continuance for a manifest abuse of discretion. *Scheib v. Crosby*, 160 Wn. App. 345, 350, 249 P.3d 184(2011). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *In re Custody of C.D.*, 188 Wn. App. 817, 828, 356 P.3d 211 (2015). "In deciding a motion to continue, the trial court takes into account a number of factors, including diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." *In re Dependency of V.R.R.*, 134 Wn. App. 573, 581, 141 P.3d 85 (2006).

"The purpose of [chapter 26.50 RCW] proceedings is to prevent domestic violence." *Scheib*, 160 Wn. App. at 352. In *Smith v. Smith*, a case regarding a request to stay a domestic violence protection order proceeding until the conclusion of the respondent's criminal trial, Division One summarized several reasons to avoid delay of such proceedings. 1 Wn. App. 2d 122, 404 P.3d 101 (2017). Abandonment of petitions by victims was and is a major concern:

> When a court repeatedly continues [domestic violence protection order] proceedings, the system becomes too challenging to navigate and pro se litigants are forced to either abandon their claims or seek pro bono or hired counsel if they are able.
>
> . . . .
>
> [D]elay may cause victims to abandon their petition due to exhaustion or frustration, or as a result of logistical obstacles. . . . [I]t may be prohibitive for a victim to return to court repeatedly to oppose multiple continuances or ask the court to reissue a temporary order; logistical impediments may pose enough of a barrier to dissuade a victim from pursuing even a temporary [protection order].

*Id.* at 135-36. The *Smith* court held that the trial court did not abuse its discretion by denying the requested stay. *Id.* at 137.

The implications of a continuance in a domestic violence proceeding contrast with continuances in dissolution proceedings. *See Chamberlin v. Chamberlin*, 44 Wn.2d 689, 703, 270 P.2d 464 (1954) ("Especially in divorce cases a liberal view toward granting continuances is taken by most courts."). In *Chamberlain*, the Washington Supreme Court held that the trial court should have granted a continuance when one spouse, who had always lived in Illinois, fell ill shortly before trial and was advised not to travel by her doctor, and the other spouse had initiated dissolution proceedings in Washington. *Id.* at 706. The denial of the continuance did not permit

the spouse in Illinois to testify in support of her answer to the complaint, which prejudiced her in that proceeding. *Id.*

Here, unlike *Chamberlain*, our record does not show that Bolivar was expected to testify in response to Jones's petition. Additionally, Bolivar's attorney was present to participate in the hearing on his behalf, he cross-examined Jones, and witnesses testified in support of Bolivar, explaining that they had never witnessed Bolivar commit domestic violence.

More importantly, the trial court expressed concern about further delay. The trial court had granted several previous continuances which burdened Jones financially in part because she had to miss work for each hearing. Bolivar's flight from New Mexico was merely delayed, not canceled, and he missed a connecting flight in Denver. Jones argued that Bolivar could have caught a later flight from Denver to Seattle. Considering all of these facts, Bolivar does not show that the trial court's denial of a continuance was untenable. *C.D.*, 188 Wn. App. at 828.

We hold that the trial court did not abuse its discretion by denying Bolivar's request for a continuance.

IV. ADMISSIBILITY OF THE DOMESTIC VIOLENCE EVALUATION AND JONES'S DECLARATION

Bolivar argues the trial court abused its discretion by admitting the domestic violence evaluation and Jones's declaration quoting key portions of the evaluation. He contends that the evaluation constituted part of a settlement negotiation, making it inadmissible under ER 408. He also asserts that the trial court erred by refusing to seal Jones's accompanying declaration. Thus, he argues that we should overturn the protection orders. We disagree.

ER 408 prohibits a trial court from admitting "evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration

12

in compromising or attempting to compromise a claim which was disputed as to either validity or amount" for the purposes of proving "liability for or invalidity of the claim or its amount." The rule "does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations . . . [and] does not require exclusion when the evidence is offered for another purpose." ER 408. "Trial courts have broad discretion in ruling on evidentiary matters and will not be overturned on appeal absent a manifest abuse of discretion." *Duckworth v. Langland*, 95 Wn. App. 1, 5-6, 988 P.2d 967 (1998). Even if the trial court committed an evidentiary error, we will affirm if the error was harmless. *See In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987).

Bolivar does not show that the evaluation and declaration were not offered for some purpose other than revealing settlement offers, like evaluating the likelihood that Bolivar would engage in further domestic violence if permitted contact with Jones or the children. Thus, he fails to show that the trial court committed a manifest abuse of discretion in admitting the evaluation.

Additionally, neither recent instances of domestic violence nor expert predictions of future domestic violence are required for a trial court to grant a permanent protection order under chapter 26.50 RCW, only a credible fear of future violence is required. *Spence v. Kaminski*, 103 Wn. App. 325, 333-34, 12 P.3d 1030 (2000). Given the previous protection orders issued to Jones and the additional evidence she offered of Bolivar's attempts to contact Jones and their children, any error in admitting the evaluation was harmless in light of the other admissible evidence in the case.

ATTORNEY FEES

Jones seeks attorney fees on appeal under RAP 18.1 and RCW 26.50.060(1) and sanctions under RAP 18.9.

RAP 18.1(a) states that a party may recover "reasonable attorney fees or expenses on review" if "applicable law grants to [the] party the right to recover" such fees or expenses. RCW 26.50.060(1)(g) provides that a trial court deciding a domestic violence action may "[r]equire the respondent to pay the administrative court costs and service fees . . . and to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." "If attorney fees are allowable at trial, the prevailing party may recover fees on appeal." *Aiken v. Aiken*, 187 Wn.2d 491, 506, 387 P.3d 680 (2017) (awarding appellate attorney fees to petitioner in domestic violence protection order proceeding who was the prevailing party on appeal). The trial court awarded Jones attorney fees below. Because we affirm the protection orders, Jones is the prevailing party on appeal. Thus, we grant Jones's request for appellate attorney fees.

"Under RAP 18.9(a), we may award attorney fees on appeal to an opposing party for defending a frivolous appeal." *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 484, 491 P.3d 1012 (2021). Because we award Jones attorney fees under RCW 26.50.060(1)(g) and Jones does not specify what additional sanctions this court may or should impose, we decline her request for further sanctions.

## CONCLUSION

We affirm the protection orders and the order to surrender weapons. We grant Jones's request for appellate attorney fees. We deny the request for further sanctions.

No. 54116-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, C.J.

We concur:

_____
Maxa, J.

_____
Price, J.