
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 38594-9-III |
| VERONICA J. BUTLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| GREGORY W. BUTLER, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Veronica Butler and Gregory Butler[1] were married for over 20 years when Veronica petitioned to dissolve their marriage. The parties have one son in common, C.B., who was a minor at the time of the divorce proceedings. After a trial in which most of the issues were contested, the court (1) divided the property and debt equally, (2) awarded Veronica spousal support for three years, (3) included

---

[1] The parties are referred to by their first names for clarity. No disrespect is intended.

Veronica's foster care reimbursements in her gross income in its child support calculations, (4) entered a final parenting plan, (5) ordered Gregory to add C.B. to his health insurance, and (6) declined to award either party attorney fees.

Veronica appealed arguing: (1) the court abused its discretion when it denied her request for a continuance; (2) the court erred in its child support calculation; (3) she should have been awarded spousal support for a greater duration; (4) the court erred when it ordered C.B. be placed on Gregory's health insurance plan; (5) the court erred when it awarded property in a way that was different than what was agreed to in an earlier settlement order; (6) the parties' debt was not divided properly; (7) she should have been awarded attorney fees; and (8) she was prejudiced because the trial judge was aware of a complaint she had previously brought against the guardian ad litem (GAL).[2]

Veronica moved to stay the appeal. We granted her motion. While the appeal was stayed, the trial court entered new orders that made Veronica the primary parent and required Gregory to pay her $694 of child support per month. Additionally, Gregory petitioned to modify spousal maintenance due to a substantial change in circumstances. The court granted his motion. Veronica also brought a motion for contempt against Gregory for nonpayment of child support. The court granted her motion.

---

[2] Veronica also argued in her opening brief that the court erred when it designated Gregory as the primary parent. However, she withdrew that argument following the entry of an agreed parenting plan. She indicated all other issues remained.

After the stay was lifted, Veronica filed three supplemental briefs. In her first supplemental brief, Veronica argued all the issues raised in her opening brief remained, except for the issue related to the parenting plan that designated Gregory as the primary parent. In her second supplemental brief, Veronica argued the court erred in modifying spousal maintenance and in not including contempt findings in its letter decision.

We affirm the trial court on each issue except for its child support calculation. We reverse the trial court's order on child support, remand for the court to exclude foster care reimbursements from Veronica's income calculation, and to recalculate the child support transfer payment amount.

## BACKGROUND

Gregory and Veronica met in 1997 and began residing together shortly thereafter. The parties married in 1999 and separated in 2020. Veronica had a son from a previous relationship who was later adopted by Gregory. Gregory also had children from a previous relationship. Together, Gregory and Veronica have one son, C.B., who was 14 years old at the time of trial in 2021.

Gregory and Veronica fostered children throughout their marriage, and Veronica continued doing so after their divorce. Veronica typically fosters two children at a time and receives a reimbursement for the children she fosters. At the time of trial, Gregory and Veronica were both employed full-time. Veronica earned $4,113.31 gross per month and Gregory earned $11,930.58 per month.

The parties purchased a home from Veronica's parents during their marriage. The parties borrowed $33,000 in 1999 to purchase the home and owed $20,000 on the loan at the time of dissolution. The parties also owned a timeshare in Mexico and three vehicles: a Toyota Tundra, a Chevrolet Venture Van, and a Kia Sedona.

The court noted that the parties lived "above their means during their marriage" and that "[t]hey have little to show for the strong income they earned during their marriage." Clerk's Papers (CP) at 577. The parties endured 3 bankruptcies and "faced about 36 court actions regarding debt collection during their marriage." CP at 577. The court noted unpaid bills were a common problem for the Butlers, and they often received "shut off" notices due to unpaid utilities and past due notices concerning the mortgage. CP at 577. Gregory testified the couple had four vehicles that were repossessed multiple times over the course of their marriage.

Veronica filed an amended petition for dissolution in March 2020. A GAL was appointed for C.B. in June 2020, and the GAL's report was filed in November 2020. The GAL provided two updated reports, one in March 2021 and a second in April 2021. Prior to trial, Veronica brought a multitude of motions. One such motion was to dismiss the GAL. This motion was denied by Judge Kevin Naught.

In April 2021, a trial notice was sent to the parties scheduling trial for September 21, 2021. In July 2021, Veronica's attorney withdrew, leaving Veronica to proceed pro

se. The notice of withdrawal stated that the matter was scheduled for trial on September 21, 2021.

A settlement conference was held in August 2021. The issues remaining for trial following the settlement conference were "property, debt, child support, spousal support, attorney fees, [and] parenting plan." CP at 537. The parties resolved very little at the settlement conference but did agree to the division of some property. The settlement conference order also stated that a "pretrial conference [was] to be scheduled 90 days before trial." CP at 537.

On September 13, 2021, Veronica moved to continue the trial date, arguing that more discovery was needed. On September 15, 2021, the court denied Veronica's motion, stating the "[m]otion to continue trial is denied as [the] parties have had ample opportunity to conduct discovery, any evidence missing or not provided material to issues of this case has not been identified, and delay is not in [C.B.'s] best interest." CP at 566.

The matter proceeded to trial on September 21, 2021, and was presided over by Judge Kevin Naught. Gregory was represented by an attorney, and Veronica was pro se. Veronica renewed her request for a continuance at the beginning of trial. The court allowed Veronica to argue the motion but noted that she had not filed a motion to renew her request for a continuance. Veronica argued that more discovery was needed, and the trial date caught her off guard because she assumed, based off the settlement conference order, that trial was going to be scheduled for at least 90 days out from the date of that

5

order.  Veronica argued that some of her witnesses were unavailable because she unable to subpoena them due to her confusion with the trial date.

The court denied Veronica's renewed motion for a continuance.  The court characterized the proceedings as contentious and noted there were over 400 court filings and 27 hearings or court proceedings.  The court reiterated the parties had had ample time to conduct discovery and it was in C.B.'s best interest to conclude the case.  The court also noted that Veronica's contention that she was caught off guard by the trial date was "not credible" because the trial date was discussed in multiple court proceedings in the two weeks leading up to trial.  Rep. of Proc. (RP) (Sept. 21, 2021) at 6.

Gregory and Veronica both testified at trial.  Veronica testified that she receives $672 in foster care reimbursement per month for each child she fosters.  Veronica requested the parties' timeshare be awarded to her.  At the conclusion of trial, Veronica advocated for spousal maintenance of $2,900 per month for eight years.  She also asked the court to award her the Kia Sedona the parties purchased prior to their separation.

Gregory testified that he wanted to provide health insurance coverage for C.B.  He testified that he has a "very, very good" plan through his employment.  RP (Sept. 23, 2021) at 291.  He also testified about two incidents where Veronica deviated from the agreed custody schedule, effectively withholding his visits with C.B.  Additionally, Gregory testified that Veronica refused to provide him with C.B.'s health insurance card after he requested it.  Both parties testified regarding alleged tax debt owed to the Internal

Revenue Service (IRS).  Neither party confirmed whether the IRS was owed money from previous tax years nor how much was owed.  The GAL testified and the GAL's report and updates were admitted into evidence.

Trial concluded on September 30, 2021.  The court later issued its letter ruling, child support order and worksheet, parenting plan, findings of fact and conclusions of law about the marriage, and its final divorce order.  The court's letter ruling was incorporated by reference into the findings of fact and conclusions of law.

The court designated Gregory as the primary residential parent to C.B.  The court assigned restrictions to Veronica under RCW 26.09.191 for "abusive use of conflict" that "creates a danger of serious damage to the child's psychological development."  CP at 571 (emphasis omitted).  Although the parties sought RCW 26.09.191 restrictions against each other for domestic violence and substance abuse, the court declined to make such findings against either party.

The court ordered Gregory to pay Veronica spousal maintenance of $2,500 per month for three years.  According to the child support worksheet and order, Veronica was to pay Gregory $826 per month for child support.  The court included Veronica's foster care reimbursements in its calculation of her income for child support purposes.  However, Veronica did not have to make any transfer payments for the first three years due to Gregory's spousal maintenance obligation offsetting her child support obligation.

In regard to the asset and debt allocation, the court found that a fair and equitable division in the case was an equal division. The court awarded each party various assets. Veronica retained the Kia Sedona and the timeshare. The court also ordered Gregory to add C.B. to his health insurance plan. The court declined to award either party attorney fees.

Veronica appealed (1) the denial of her motion for a trial continuance, (2) the court's decision to make Gregory the primary parent, (3) the duration of spousal maintenance, (4) the child support calculation, (5) the debt and property allocation, (6) the denial of an award of attorney fees, and (7) the court's decision that C.B. be added to Gregory's health insurance plan. Veronica also contended that she was prejudiced because Judge Naught was made aware of her grievance with the GAL before trial began.

While the appeal was pending, Veronica motioned this court for a stay because Gregory was planning to move to Missouri with C.B. The parties agreed that C.B. would not move to Missouri with Gregory, and Veronica petitioned the court to change the parenting plan. The case was stayed by this court.

In January 2023, prior to the stay, Gregory petitioned for a modification of spousal maintenance. He requested that maintenance be suspended due to a "substantial change in circumstances" based on him being "laid off from his job." CP at 1155. Veronica moved to strike his petition based on deficient service. In response, Gregory filed a

motion to proceed with the spousal support modification and requested an evidentiary hearing, which was granted.

In March 2023, Gregory filed a "notice of intent to move with child" explaining that he was planning to move to Missouri for a new job. CP at 1502 (capitalization omitted). Veronica objected to the relocation. The court entered a temporary parenting plan designating Veronica as the custodial parent. The court also entered a temporary child support order requiring Gregory to pay Veronica child support totaling $694 per month. Thereafter, Veronica filed a motion for contempt due to Gregory's alleged failure to pay child support, spousal support, and C.B.'s health care costs.

An evidentiary hearing was held in September 2023. At the hearing, a commissioner was presented with testimony from Gregory and Veronica regarding the parties' income, for purposes of modifying spousal maintenance, as well as testimony related to Veronica's motion for contempt. The commissioner requested more financial documents from the parties at the conclusion of the hearing.

The hearing resumed in October 2023 with a lingering dispute about whether the parties had filed the documents the court requested. The hearing was again continued. At the third hearing, the court found Gregory in contempt and ordered him to pay Veronica $765.49. The commissioner entered a letter decision addressing contempt and maintenance and entered an order on contempt. Rather than suspending Gregory's

9

spousal maintenance obligation, as he requested, the commissioner reduced his monthly payment from $2,500.00 to $1,160.00 and declined to modify the termination date.

Based on the commissioner's letter decision, Gregory drafted a proposed order modifying spousal support and noted it for a presentment hearing. Veronica objected to entry of a maintenance order, arguing the court's calculations contained in its letter decision, among other things, were incorrect. The commissioner issued an order stating it would reconsider its letter decision and amend it if necessary. The commissioner issued an amended letter decision but did not change its decision to modify maintenance to $1,160 per month nor change the end date for maintenance. The commissioner issued an order modifying spousal maintenance that reflected its letter decision. Veronica moved for revision of the commissioner's order which was denied.

Veronica appealed the court's decision on revision and filed supplemental briefing. Veronica's three supplemental briefs indicated the same issues from her first appeal remained, save the issue of Gregory being the primary parent, and she raised new arguments related to the court's decision on the modification of maintenance.

## ANALYSIS

### TRIAL CONTINUANCE

Veronica argues the court erred when it denied her motion for a continuance. She contends that the earlier commissioner's ruling led her to believe that trial would be set at

least 90 days out from the settlement conference and that she was prejudiced by the court's denial of the continuance. We disagree.[3]

The denial of a request for a continuance "is addressed to the sound discretion of the court, and the exercise of that discretion will be set aside only for a manifest abuse thereof." *Mackay v. Mackay*, 55 Wn.2d 344, 348, 347 P.2d 1062 (1959). An abuse of discretion standard "as applied to divorce cases is not confined to deciding a case by whim, caprice, or arbitrary conduct, through ulterior motives or in willful disregard of a litigant's rights, but it also includes a discretion exercised upon grounds or to an extent clearly untenable or manifestly unreasonable." *Chamberlain v. Chamberlain*, 44 Wn.2d 689, 698, 270 P.2d 464 (1954).

Whether a ruling on a motion for a continuance is within the proper exercise of discretion usually depends on the facts of the particular case with the chief test being whether the grant or denial of the motion furthers justice. *Id.* at 703. However, a party who moves for a continuance must have exercised good faith and diligence to prevent the need for delay. *Id.*

---

[3] As a preliminary matter, Veronica argues we should entirely disregard Gregory's response brief based on his noncompliance with the RAPs and because it is untimely. Though the clerk of this court noted Gregory did not comply with numerous RAPs, we nevertheless accepted his brief. Veronica was given latitude to file 5 briefs in this matter, totaling almost 200 pages. We decline to strike Gregory's 18-page response brief.

Veronica contends that it was an abuse of discretion for the court to deny her request for a trial continuance because the commissioner's August 31, 2021, ruling implied that trial would be set at least 90 days out. Veronica further argues that a local court rule states that, following a settlement conference, the court either sets the matter for trial or schedules an additional settlement conference.

On August 31, 2021, a commissioner issued a settlement conference order that stated, in relevant part, "pretrial conference to be scheduled 90 days before trial." CP at 537. Veronica argues she relied on this language and assumed that trial would be pushed out at least 90 days. Veronica cannot show an abuse of discretion based on her unverified assumptions. Furthermore, the trial court found, and we agree, that Veronica's claim that she did not know trial would be commencing on September 21, 2021, was disingenuous. As the court pointed out, on April 20, 2021, the court administrator issued a trial notice setting the case for trial on September 21, 2021. Additionally, the September trial date was listed on the notice of withdrawal issued by Veronica's attorney on July 9, 2021. The trial court also recognized that Veronica brought several pretrial motions in the two weeks leading up to the trial, including a motion to continue the trial that was denied by a commissioner. It is unlikely a party claiming to be unaware of a trial date would move for a continuance of the trial date.

The court, in its oral ruling on Veronica's motion to continue, noted that the case was filed in January 2020, over one and one-half years prior to trial. In that time, there

12

had been an unusual number of filings and hearings in the case, including 6 custody changes or major changes to the residential schedule for C.B. and 10 requests for contempt. The court noted that the divorce had been extremely contentious and that C.B. needed a resolution in the case. Finally, the court stated that additional discovery was unnecessary because the parties had ample time to conduct discovery, and "there's nothing here that I've been told discovery-wise that is material or would lead to material evidence." RP (Sept. 21, 2021) at 6. Consequently, the court did not find good cause to grant a trial continuance.

Given the totality of these facts, the trial court did not abuse its discretion in denying Veronica's motion for a continuance.

Veronica next argues that the court violated Yakima Local Family Law Rule 3(b)(3) when it did not set a new trial date following the settlement conference. We disagree.

The rule states, in relevant part:

(3) *Settlement Conference and Trial Dates*. Upon receiving the Note for Settlement Conference and completed Position Statement, the Court Administrator shall schedule a settlement conference and shall send notice to the parties and any assigned guardian ad litem or family court investigator. The settlement conference shall not be scheduled sooner than 60 days after the Note for Settlement Conference is filed. **At the conclusion of the settlement conference the court may direct the Court Administrator to set the matter for trial or may schedule an additional settlement conference.**

Yakima County Super. Ct. Local Family Law Rules (LFLR) 3(b)(3) (2021) (emphasis added).

The word "may" in a court rule signifies discretion, whereas the word "shall" denotes a mandatory action. *In re Marriage of Kim*, 179 Wn. App. 232, 250-51, 317 P.3d 555 (2014). Here, the local rule Veronica points to states that "the court *may*" set the matter for trial or schedule an additional status conference. LFLR 3(b) (2021) (emphasis added). In this case, the trial date was already set. Nothing in the rule requires it to be reset following a settlement conference. Thus, the court did not violate the local rule by not setting a new trial date after the settlement conference.

Veronica also points to Yakima Local Family Law Rule 3(b) (2021) that states, in relevant, part, "[d]omestic relations cases shall not be set for trial unless ordered and after a full settlement conference has been held." Veronica contends the court, according to this rule, should not have scheduled trial prior to the settlement conference.

The trial notice was sent on April 20, 2021. The settlement conference was held on August 31, 2021, and the September trial date reflected in the April trial notice remained the same. According to the local rule, trial should not have been set until after the settlement conference was held. However, "a superior court may, for good reason, relax and suspend its own special rules of procedure." *Snyder v. State*, 19 Wn. App. 631, 637, 577 P.2d 160 (1978). "[O]bservation of local rules is largely discretionary in the trial court." *Id*.

14

Further, Veronica fails to show how she was prejudiced. She argues that she was unable to call all her witnesses, but the court noted in its letter ruling that she was able to call all but one of her witnesses and "there was no proffer by [Veronica] what he would say." CP at 568. Veronica also argues that more discovery was necessary, but the court noted at trial that "there's nothing here that I've been told discovery-wise that is material or would lead to material evidence." RP (Sept. 21, 2021) at 6. Further, the order denying Veronica's pretrial motion for a continuance stated that the "motion to continue trial is denied as parties have had ample opportunity to conduct discovery." CP at 566. The trial court was well within its discretion to deny Veronica's motion to continue trial.

CHILD SUPPORT

Veronica contends the court erred when it included her foster care reimbursements as income. Veronica also argues that her child support obligation should be deviated downward due to her duty to care for the children she fosters. We agree that Veronica's foster care reimbursements should not have been included in her income calculation. We disagree with Veronica regarding the downward deviation of her child support obligation.

We review a trial court's child support determination for an abuse of discretion. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 470, 472, 475 P.3d 993 (2020). Discretion is abused when a trial court's decision is based on untenable grounds or untenable reasons. *Little v. King*, 160 Wn.2d 696, 703, 161 P.3d 345 (2007). Questions of law and conclusions of law are reviewed de novo. *Sunnyside Valley Irr. Dist. v.*

15

*Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). Substantial evidence must support the trial court's findings of fact. *In re Marriage of Schumacher*, l00 Wn. App. 208, 211, 997 P.2d 399 (2000). Substantial evidence is evidence in "'sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991) (quoting *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)).

Veronica argues that the court erred when it included her foster care reimbursements as income in its calculation for child support. We agree.

In *In re Marriage of Rusch*, we held that travel reimbursements for work-related travel expenses are not to be included as income for child support purposes. 124 Wn. App. 226, 98 P.3d 1216 (2004) *overruled on other grounds by In re the Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007). There, we held that if reimbursements are not taxable income, then the court should not include those reimbursements in the party's income calculation. *Id*. at 235.

Similarly, here, foster care payments are generally not considered as income for income tax purposes. 26 U.S.C. § 131. Instead, foster care payments are reimbursements for childcare expenses. *DeWater v. State*, 130 Wn.2d 128, 136, 921 P.2d 1059 (1996).

Thus, the trial court abused its discretion when it imputed to Veronica $1,344 per month of foster care reimbursements as income.[4]

Veronica next argues that her child support transfer amount should have been deviated downward from the standard calculation due to her "duty to support" foster children.  Br. of Appellant at 46.  We disagree.

As a preliminary matter, Veronica, as the primary parent, now receives child support from Gregory.  Thus, this issue is moot.  Turning to the merits, Veronica seems to argue that because she chooses to foster children and thus must provide them with support while in her care, her child support obligation should be deviated downward.  This argument fails.  Veronica chooses to foster children which, while admirable, does not warrant a downward deviation of her child support obligation.  As Veronica points out, she is reimbursed for the childcare she provides for the children she fosters.

Veronica cites *In re Marriage of Zacapu*, for the proposition that a court may deviate from the standard calculation when one or both parents have children from other relationships to whom the parents owe a duty of support.  192 Wn. App. 700, 705, 368 P.3d 242 (2016).  Fatal to Veronica's argument is the fact that the children she fosters are

---

[4] The court imputed $1,344 as income to Veronica because it found that she typically fosters two children a month and is reimbursed about $672 per child, per month.

not from a previous relationship. Consequently, the court did not abuse its discretion when it did not deviate her child support transfer amount downward.

SPOUSAL MAINTENANCE

Veronica argues the court abused its discretion by not awarding her lifetime or long-term spousal maintenance. We disagree. Veronica also argues that the petition to modify spousal maintenance was not properly served and, alternatively, that the court's decision to modify maintenance was erroneous. We disagree with both arguments.

*Maintenance Award*

Veronica argues that long-term or lifetime spousal maintenance should have been awarded following trial.

We review a trial court's award of spousal maintenance for an abuse of discretion. *In re Marriage of Mueller*, 140 Wn. App. 498, 510, 167 P.3d 568 (2007). We review the trial court's factual findings for substantial evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Unchallenged findings of the trial court are treated by this court as verities on appeal, and our review will be limited to determining whether findings support the conclusions of law. *In re the Application of Santore for Writ of Habeas Corpus*, 28 Wn. App. 319, 323, 623 P.2d 702 (1981); *McIntyre v. Fort Vancouver Plywood Co.*, 24 Wn. App. 120, 123, 600 P.2d 619 (1979).

Under RCW 26.09.090, the amount and duration of maintenance is limited by the requirement that the award be just in light of the relevant factors. Those factors include,

but are not limited to: (1) the financial resources of the party seeking maintenance; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age, physical, and emotional condition, and financial obligations of the party seeking maintenance; and (6) the ability of the party from whom maintenance is sought to meet his or her needs and financial obligations. RCW 26.09.090. "Nothing in RCW 26.09.060 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1)." *In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004). Instead, "[t]he statute merely requires the court to consider the listed factors." *Id.*

Lifetime or long-term spousal maintenance is generally disfavored. *See In re Marriage of Leaver*, 20 Wn. App. 2d 228, 241, 499 P.3d 222 (2021). "Although rare, courts must keep in mind that long-term or lifetime maintenance will sometimes be warranted. This may be especially true where one spouse has an ability to pay but the marital community has not retained sufficient liquid assets to assure a requesting spouse the ability to be self-sufficient." *Id.*

Here, the court analyzed each factor listed in RCW 26.09.090, concluded that spousal maintenance was appropriate, and ordered Gregory to pay Veronica spousal maintenance for three years. Veronica does not challenge any of the court's findings related to the factors in RCW 26.09.090 or argue that they are not supported by

substantial evidence. Consequently, the court's factual findings are considered verities on appeal.

As to the factors listed in RCW 26.09.090, the court found, as to factor one, that Gregory earned essentially twice as much as Veronica. The court noted that there was no evidence regarding the time necessary for Veronica to find employment, while simultaneously recognizing that Veronica was employed and earned about $4,113.31 per month. As to factor three, the standard of living established during the marriage, the court noted that "[t]he parties lived above their means during the marriage" and that they "have little to show for the strong income they earned." CP at 577. The court wrote that they faced about 36 court actions regarding debt collection and endured 3 bankruptcies. The court further noted that the Butlers' marriage was long-term, lasting over 20 years, that Veronica had a need for maintenance, and that Gregory had an ability to pay.

The court ultimately ordered that Gregory pay Veronica $2,500 a month for three years. In actuality, the transfer amount was $1,674 per month after the spousal maintenance amount was offset by Veronica's child support obligation to Gregory.

Veronica points to *In re Marriage of Leaver* for the proposition that though lifetime maintenance is disfavored, it is warranted where "the marital community has not retained sufficient liquid assets." 20 Wn. App. 2d at 241. In *Leaver*, the parties enjoyed a very high standard of living during the marriage but had almost no liquid assets and over $500,000 of debt at the time of dissolution. *Id.* at 232. Further, the party seeking

maintenance had been the homemaker, had little to no job training or job prospects, and held no liquid assets. *Id.* at 231, 238-39.

Unlike *Leaver*, Veronica is employed and has been throughout the marriage. Further, the parties did not enjoy a high standard of living during their marriage. The court noted that "shut off" notices regarding unpaid utilities were a regular occurrence, that the Butlers had been subject to a multitude of court actions regarding debt collection, and that they had endured multiple bankruptcies. CP at 577.

The trial court did not abuse its discretion in awarding Veronica $2,500 of spousal maintenance per month for a period of three years. As previously noted, lifetime and long-term spousal maintenance is generally disfavored. Further, Veronica's standard of living postdissolution is no worse than it was during the marriage. Thus, the trial court's decision to award spousal maintenance for three years was based on tenable grounds.

*Modification of Spousal Maintenance*

Veronica next argues that service of the summons and petition to modify spousal maintenance was improper. Alternatively, she argues that Gregory did not demonstrate a substantial change in circumstances, that the maintenance modification was incorrectly calculated, and that the court should have modified child support as well.

First, Veronica argues she was improperly served with the petition to modify spousal maintenance and that the order modifying maintenance is therefore void. Below, Veronica objected and moved to strike the petition based on improper service. Despite

her motion and objection, the court proceeded to set an evidentiary hearing to determine whether there had been a substantial change in circumstances.

Veronica relies on RCW 26.09.175(2), pertaining to petitions to modify child support, which states:

> The petitioner shall serve upon the other party the summons, a copy of the petition, and the worksheets in the form prescribed by the administrator for the courts. . . . If the decree to be modified was entered in this state, service shall be by personal service or by any form of mail requiring a return receipt.

However, RCW 26.09.170, regulating the modification of spousal maintenance, contains no such service requirement.

Furthermore, CR 4.1 governs the commencement of actions under chapter 26.09 RCW and provides that CR 4 governs service of the petition and summons. But CR 4.1 does not apply to a petition for modification of spousal maintenance because a petition for modification is not a commencement of an action. Rather, it seeks modification of an action that has already been commenced.[5] Unlike the initial service of process when a dissolution is sought, service of pleadings in a modification action should come as no surprise to a party who knows the terms of the dissolution decree regarding maintenance are always subject to modification. *See In re Marriage of McLean*, 132 Wn.2d 301, 313, 937 P.2d 602 (1997).

---

[5] *See Pagel v. Elkhart*, noted at 107 Wn. App. 1041 (2001).

Assuming personal service was required, the process server's declaration is void of any assertion that she personally served Veronica with the summons and petition on January 12, 2023. However, Veronica concedes she was properly served with the summons and petition on February 23, 2023. Based on the record, the hearing on the petition to modify spousal maintenance was not held until September 20, 2023.

Due process requires notice reasonably calculated to apprise parties of the pending action so as to enable them to present their objections if they so choose. *McLean*, 132 Wn.2d at 308; *Sweeny v. Sweeny*, 43 Wn.2d 542, 548, 262 P.2d 207 (1953). Veronica had almost seven months between when she was properly served and the hearing to modify maintenance. Thus, Veronica's arguments, that she was not served properly and that the court's order on the petition to modify maintenance is void, fails.

Veronica next argues spousal maintenance should not have been modified because Gregory failed to demonstrate a substantial change in circumstances. We review the superior court's modification of maintenance for an abuse of discretion. *In re Marriage of Ochsner*, 47 Wn. App. 520, 524-25, 736 P.2d 292 (1987). RCW 26.09.170(1) governs the modification of spousal maintenance. Under RCW 26.09.170(1)(b), the court may modify maintenance only when the moving party has shown a "substantial change of circumstances." A substantial change of circumstances includes a fact that is unknown to the trial court or an unanticipated fact that arises after entry of the decree. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 105, 74 P.3d 692 (2003). A change in circumstances

23

occurs on a change in the financial ability of the obligor spouse to pay in comparison with the need of the spouse receiving maintenance. *Ochsner*, 47 Wn. App. at 524. A voluntary reduction in income will not constitute a change in circumstances absent a "substantial showing of good faith." *Lambert v. Lambert*, 66 Wn.2d 503, 510, 403 P.2d 664 (1965).

Veronica argues Gregory's income was not affected by his job loss and that his income actually increased. She also argues Gregory's substantial change in circumstances, if any, was temporary.

Here, the commissioner tasked with determining whether maintenance should be modified had a difficult time prompting the parties to produce financial documents. Following the first evidentiary hearing, the commissioner requested more information including updated financial declarations, tax returns, and proof of income and liquid assets from both Gregory and Veronica. At the continued hearing, Gregory's attorney noted he had not received an updated financial declaration or paystubs from Veronica. Veronica disputed that she had not filed the relevant documents. Gregory's attorney requested the matter be continued again, and the commissioner responded:

> Either we're going to, either you can both jump right into argument and then I'll do it on the evidence that's in the record or we'll, you know, or I'll set you another Court date, you know, for argument, but I'm not going to do half-measures on this. It's too big of a deal, because you had a big maintenance award.

> From my vantage point you have a substantial change in his earnings, and you have your own earnings, and you're getting child support. So you're in a very different situation than you were. So I need to be able to analyze the need and the ability to pay, and that's why I have to know exactly what you're making.

RP (Oct. 25, 2023) at 61. The commissioner heard arguments and testimony, and the matter was continued once again.

Ultimately, the commissioner entered an order modifying maintenance and a substitute letter ruling that was incorporated by reference into the order. The court's letter ruling was thorough and comprehensive. The court noted that Gregory was working for a new employer in Missouri, after being laid off by his previous employer, and earning statements from his current employment indicated he was making $9,846.07 per month as opposed to $10,384.62 per month at the time of divorce. On the other hand, Veronica was earning $4,113.31 per month at the time of the divorce, not including her foster care reimbursements. By the time of Gregory's maintenance modification petition, Veronica was earning between $5,166.66 and $5,416.67 per month.

Based on the changes to the parties' incomes, the commissioner found there had been a substantial change in circumstances. It also found both Gregory and Veronica had "experienced unemployment during the course of the last two years." CP at 1442. Based on the parties' new incomes and expenses, the court modified maintenance from $2,500 a month to $1,160 a month. That figure reflected "one half of the difference in [the parties'] current income, adjusted for child support now being paid by [Gregory], and

rounded to the nearest whole dollar." CP at 1443. Moreover, though Gregory originally requested suspension of maintenance, the court noted it did not suspend maintenance at any point and instead modified the amount based on the change in circumstances.

The court did not abuse its discretion. Although Veronica disagrees with the commissioner's calculations, the calculations were reasonable based on the information before the court. Again, the parties have been less than cooperative, and both have been vexatious during the course of these proceedings. In arguing that Gregory's income increased, Veronica points to various one-time bonuses and payouts Gregory received. But the court included various nonrecurring sources of income in Gregory's income calculation.

Veronica also takes issue with the court's calculation of her income, arguing it backdated her income calculation for months she was unemployed. But the court had wide latitude to determine the parties' incomes and to fashion a maintenance modification order, especially in light of the difficulty it had in getting the parties to cooperate.

Veronica further argues Gregory's change in circumstances was merely temporary because his loss of employment was not permanent. However, the court did not base its decision on Gregory's temporary unemployment; it instead based its decision on Gregory's income from his new employment. Veronica asserts the court incorrectly calculated the spousal maintenance award and more financial resources must be provided

to and considered by the court.  As explained above, the court did not err.  The parties'

failure, if any, to produce adequate financial documents lies with them.  The court based

its decision on the evidence before it, or lack thereof.

Veronica next argues that the expenses of third-party adults, here, Gregory's

fiancé, are not assignable to him for calculation purposes.  Veronica acknowledges the

court's letter ruling states that Gregory's fiancé's income "is not imputed to him in my

analysis" and that the court only considered her income as "to its impact on his expense."

CP at 1443.  Ultimately, the court found that Gregory's fiancé's expenses related to

supporting other minor children in the household, who are not Gregory's biological

children, "does impact [Gregory's] household expenses, but it is largely offset by his

fiancé's current income."  CP at 1443.  Thus, the court did not find that expenses of

related third-parties impacted Gregory's expenses.

Finally, Veronica seemingly argues the court should have calculated maintenance

before it calculated or factored in child support.[6]  In many cases where a party requests a

maintenance modification, child support will have already been calculated, just as it was

here.  Moreover, after the court's initial letter decision, in which it factored child support

---

[6] Veronica also argues child support should have been modified at the same time as spousal maintenance.  Currently, the temporary child support orders indicate Gregory must pay her $694 per month.  She argues the amount should be $711.  Again, based on the record before it, the court did not err in not adjusting child support a mere $17 a month.

transfer amounts into each of the parties' incomes, Veronica brought a motion objecting

to entry of the maintenance order arguing, in part, that "[f]inancial support for children"

should not be used for calculating a parent's income. CP at 1405. The court granted her

motion in part and issued a new letter decision that removed the section that factored in

child support to the parties' incomes, and that reflected new incomes of the parties that

did not include child support. *Compare* CP at 1369-74 *with* CP at 1440-44. Thus, any

error Veronica claims the court made was remedied.

In sum, the court did not err in modifying maintenance based on a substantial

change in circumstances.

CHILD'S HEALTH INSURANCE

Veronica argues the court abused its discretion when it ordered that C.B. be put on

Gregory's health insurance plan. We disagree.

We review claims of error on a child support order for abuse of discretion. *In re

Marriage of Choate*, 143 Wn. App. 235, 240, 177 P.3d 175 (2008). In regard to health

insurance for a minor child, RCW 26.09.105(6)(b) states that:

> If both parents have available health insurance coverage or health care
> coverage that is accessible to the child at the time the support order is
> entered, the court has discretion to order the parent with better coverage to
> provide the coverage for the child and the other parent to pay a monthly
> payment toward the premium. In making the determination of which
> coverage is better, the court shall consider the needs of the child, the cost
> and extent of each parent's coverage, and the accessibility of the coverage.

Veronica argues the court abused its discretion when it ordered that C.B. be added to Gregory's health insurance plan even though he had historically been on Veronica's plan. Veronica contends the court had no basis to find that Gregory's plan was superior.

In its final child support order, the court ordered Gregory to pay the premium and provide health insurance to C.B. and that Veronica was to repay Gregory her proportional share of the premium. RCW 26.09.105(6)(b) gives the court discretion "to order the parent with the better coverage to provide the coverage for the child and the other parent to pay a monthly payment toward the premium." The court, in making its determination, must consider the needs of the child, the cost and extent of each parent's coverage, and the accessibility of coverage. *Id.*

The court, in deciding to put C.B. on Gregory's insurance plan, noted that there was "unrebutted testimony . . . that [Gregory's] insurance was better than the insurance [Veronica] currently provides." CP at 574. The record reflects that Gregory testified on direct examination that "[he] tried to work with [Veronica] to get [C.B.] on [his] plan . . . [b]ecause [he] wanted to provide better coverage for [him]." RP (Sept. 23, 2021) at 291. When asked why C.B. would be better on his plan, Gregory responded, "We have a very, very good plan. It's actually very excellent." RP (Sept. 23, 2021) at 291. The record does not reflect that there was any testimony from Veronica regarding her health insurance plan.

Given the unrebutted testimony, it was not an abuse of discretion for the court to order C.B. be placed on Gregory's health insurance plan.

COURT'S AWARD VERSUS THE SETTLEMENT ORDER

Veronica argues the court erred when it did not uphold certain portions of the settlement order entered before trial, namely, aspects of the property distribution. We disagree.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." *In re Marriage of Wright*, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). "This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion." *Id.*

RCW 26.09.080 states that in a proceeding for dissolution of a marriage the court must make a just and equitable distribution of property and in doing so must consider: (1) "the nature and extent of the community property;" (2) "the nature and extent of the separate property;" (3) "the duration of the marriage;" and (4) "the economic circumstances of each spouse." RCW 26.09.080(1)-(4). This list of factors is nonexclusive. RCW 26.09.080.

Veronica argues that the settlement conference order filed on August 31, 2021, should have been upheld. The order stated, in relevant part, that the parties agreed that Veronica would get "the surround sound . . . [and] home surveillance [system]." CP at

538.  However, the final divorce order and the court's letter ruling awarded the surround sound system and the home surveillance system to Gregory.  Veronica claims that this was error.  We disagree.

In its letter ruling, the court addressed each enumerated factor of RCW 26.09.080 in turn.  Veronica does not challenge the court's findings as to each factor, so they are considered verities on appeal.  *Fuller v. Emp. Sec. Dep't*, 52 Wn. App. 603, 605, 762 P.2d 367 (1988) ("As a general rule, unchallenged findings of the trial court will be treated by this court as verities on appeal, and review will be limited to determining whether the findings support the conclusions of law.").

As to the first factor, the court outlined the community property of the parties. The court noted as to the second factor that Gregory had acquired a vehicle postseparation.  Further, the court noted that the marriage was long-term and proceeded to outline the economic circumstances of the parties including their monthly incomes. The court ruled that "[a] fair and equitable division in this case is roughly equal division." CP at 575.  The court proceeded to outline the property division.

As stated above, the court has broad discretion to make a just and equitable distribution of property.  Here, the court considered all of the relevant factors of RCW 26.09.080 and equally divided the community's assets.  In doing so, Gregory was awarded the home surveillance system and the surround sound system.  This was within

the court's discretion. The court did not abuse its discretion when it awarded Gregory the home surveillance system and the surround sound system.

DEBT DISTRIBUTION

Veronica argues the court abused its discretion in distributing the parties' debts. We disagree.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." *Wright*, 179 Wn. App. at 261. "This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion." *Id.* "If the [court's] decree results in a patent disparity in the parties' economic circumstances, [then] a manifest abuse of discretion has occurred." *Rockwell*, 141 Wn. App. at 243.

Veronica argues that the court abused its discretion because it failed to consider certain debts in its distribution. Veronica contends that her debt load is much higher than the court's calculation because the court failed to include certain items in its debt distribution. Specifically, she alleges that the court did not consider the parties' $8,000 IRS debt, the debt owed on the timeshare, and the debt owed on a vehicle, and that it erroneously assigned all of this debt to her. We disagree.

As discussed in more detail above, in its letter ruling, the court addressed each enumerated factor of RCW 26.09.080 in turn. Veronica does not assign error to any of these findings, and they are thus considered verities on appeal.

*The Kia Sedona*

Veronica argues the court abused its discretion because it failed to consider the $20,148 debt owed on the Kia Sedona, awarded to her as separate property, in its debt distribution.

Here, the court awarded Veronica the Kia Sedona but did not assign a value to the car or identify any debt associated with it. At trial, Veronica specifically asked for the Kia Sedona to be awarded to her. Further, Veronica has not demonstrated that the Kia Sedona is valued at less than she owes. She did not testify regarding the value of the vehicle, nor any debt associated with it. Consequently, there is no evidence showing that the court abused its discretion when it awarded the Kia Sedona to Veronica subject to the amount owed on it.

*The Timeshare*

Veronica next argues the court abused its discretion because it failed to consider the $2,791 debt associated with the timeshare, awarded to her as separate property, in its debt distribution. Her argument is without merit.

At trial, Veronica specifically requested that she be awarded the timeshare as a separate asset and stated that she would be willing to take on the payments associated with it. The court honored her request and awarded her the timeshare as a separate asset subject to the amount owed on it. Veronica cannot now complain that the court abused its discretion when it awarded her the timeshare that she requested. Consequently,

33

Veronica's argument fails. The court did not abuse its discretion when it awarded her the timeshare subject to the $2,791 debt allegedly owed on it.

### *The IRS Debt*

Veronica next argues the court abused its discretion by not factoring in the IRS debt that she alleges she has covered.

Veronica contends the parties had $8,000 in IRS debt at the time of dissolution. There is nothing in the record that supports this contention. The parties testified that there *might* be IRS debt, but neither one knew what amount, if any, was owed. The court found that "[the] [w]ife testified there is no [IRS tax] debt." CP at 580. Veronica argues that she testified at trial that the parties owed $8,000 to the IRS but the record does not reflect this. In essence, Veronica argues that substantial evidence does not support the court's finding that she testified that there was no IRS tax debt.

At trial Veronica was asked about any outstanding IRS tax debt:

[COUNSEL FOR GREGORY]: But you're not here today requesting that [Gregory] assist you in paying off any debt to the IRS?

[VERONICA]: Yes, yes, I am, it's a community debt. If there's anything owed to IRS, [Gregory] has filed a statement that he received from the IRS, but again, he didn't share with me and so that is community debt if we owe something to the IRS.

[COUNSEL FOR GREGORY]: So there is debt with the IRS?

[VERONICA]: I don't know the status of it.

[COUNSEL FOR GREGORY]: How much is it?

[VERONICA]: I don't know other than what [Gregory] filed that said it was maybe from memory, 8,000 dollars.

RP (Sept. 23, 2021) at 226.  The record reflects that Veronica thought that there *might* be tax debt with the IRS, but she did not produce any other evidence regarding any alleged debt owed to the IRS and she did not testify further on the issue.

Veronica also argues that Gregory confirmed at trial that there was outstanding tax debt, but the record does not reflect this either.  When asked if he had provided Veronica with his 2020 tax returns, Gregory stated, "No, I have not filed my taxes yet.  We owe the IRS money."  RP (Sept. 24, 2021) at 338.  It appears from the context of Gregory's statement that he was referring specifically to his 2020 return, and not generally to a larger tax debt.

Earlier in the trial, the court attempted to clarify with Gregory whether or not there was any outstanding tax debt:

THE COURT: Okay.  Like did I miss any other debts?

[GREGORY]: There's IRS debt.

THE COURT: Okay, now that's what I'm confused because I thought you said you didn't know.

[GREGORY]: [Veronica]—

THE COURT: Doesn't know credit card or IRS debts.

[GREGORY]: I don't.  I don't know.  She, as I've stated, she did all the finances.  I don't know what all is out there lurking for whatever I might have to pay in debt.

RP (Sept. 23, 2021) at 300-01.

All that was before the court was Veronica's statement that she did not know if the parties had any IRS debt and Gregory's similar testimony. There is nothing further in the record showing that the parties owed the IRS any money, much less $8,000. Consequently, the court found that there was no IRS debt and substantial evidence supported this finding. Thus, it was not an abuse of discretion for the court to decline to factor any alleged IRS debt into the parties' debt allocation.[7] The court did not abuse its discretion in distributing the parties' debt.

ATTORNEY FEES

Veronica argues that the court abused its discretion when it did not order Gregory to pay any or all of her attorney fees. We disagree.

We review a court's ruling regarding attorney fees under RCW 26.09.140 for an abuse of discretion. *In re Marriage of Nelson*, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991). A decision whether or not to award attorney fees is discretionary and neither party is entitled to "fees as a matter of right." *In re Marriage of Terry*, 79 Wn. App. 866, 871, 905 P.2d 935 (1995). Instead, the court determines "whether one party has a need and the other party has the ability to pay" and then determines whether or not to award either party fees. *Id*. RCW 26.09.140 states that the court may, after considering the

---

[7] Veronica testified in 2023 that there was no balance owed to the IRS.

financial resources of both parties, order a party to pay a reasonable amount to the other party for its attorney fees.

Here, in its letter ruling, the court declined to award either party their attorney fees, though both parties requested them. The court stated that "neither party has a financial need and neither party has an ability to pay." CP at 578. Veronica challenges the court's finding that she does not have a need and that Gregory does not have the ability to pay. Her argument fails.

The court found the parties did not have a need or ability to pay due to "the judgment for unpaid GAL fees, the imposition of spousal maintenance and the equal distribution of assets and debts." CP at 578. The record reflects that the court ordered that Gregory pay Veronica spousal maintenance in the amount of $2,500 per month for three years. The child support worksheet shows that the parties' income after factoring in spousal maintenance and monthly deductions is almost equal. Finally, the child support order reflects that each party owes about an equal amount to the GAL for fees. Thus, substantial evidence supports the court's findings related to its decision to award neither party attorney fees. The court did not abuse its discretion when it declined to award attorney fees to Veronica.

ALLEGED BIAS OF TRIAL JUDGE

Veronica argues that she was prejudiced because the court was aware of her previous grievance with the GAL. This issue was raised for the first time on appeal. Thus, we decline to address it.

In general, we will not consider an argument raised for the first time on appeal. RAP 2.5(a). The purpose of this rule is to encourage the efficient use of judicial resources. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Veronica provides no argument as to why we should consider this issue for the first time on appeal. Thus, we decline review of her claimed error.

CONTEMPT

Veronica argues the court erred by not including contempt findings in its substitute letter ruling.[8] The court's exclusion of contempt findings in its letter ruling is of no consequence. The court entered an order finding Gregory in contempt that contained detailed findings and did not incorporate its letter ruling. Any findings contained in the letter ruling related to contempt would have been irrelevant.

---

[8] This argument comes from Veronica's second supplemental brief.

No. 38594-9-III
*In the Marriage of Butler*

ATTORNEY FEES ON APPEAL

To the extent Veronica requests her attorney fees on appeal, we decline her request due to her noncompliance with RAP 18.1. Veronica failed to "devote a section" of her opening brief or any of her supplemental briefs to a request for attorney fees on appeal. RAP 18.1(b).

CONCLUSION

We reverse and remand for the trial court to remove Veronica's foster care reimbursements from its calculation of her gross income for purposes of setting child support. We affirm the trial court on all of the other issues raised.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Staab, C.J.

Hill, J.

39